Filed 3/11/21  P. v. Gyulnazaryan CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Appellant,<br><br>        v.<br><br>MIKAEL GYULNAZARYAN,<br><br>        Defendant and Respondent. | F077631<br><br>(Super. Ct. No. CF04906532)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Michael G. Idiart, Judge.

Lisa A. Smittcamp, District Attorney, and Galen Rutiaga, Chief Deputy District Attorney, for Plaintiff and Appellant.

Law Offices of Anthony P. Capozzi and Anthony P. Capozzi, for Defendant and Respondent.

-ooOoo-

Mikael Gyulnazaryan successfully vacated his conviction pursuant to Penal Code[1] sections 1016.5 and 1473.7.  The district attorney appeals, arguing neither section was satisfied and section 1473.7 was improperly invoked.  We affirm.

## BACKGROUND

In 2005, Gyulnazaryan pled no contest to transporting methamphetamine (Health and Saf. Code, § 11379, subd. (a)) and admitted a related firearm possession enhancement (§ 12022, subd. (c)).  He was sentenced to serve three years in state prison.

Upon completing the three-year sentence, Gyulnazaryan was apparently detained by the federal government and eventually deported.  He returned to this country in 2014 and immediately contacted his current counsel.  In 2017, he filed a motion to vacate his conviction "based on the fact that [he] was not advised of the immigration consequences" by the court "as provided [in] … section 1016.5."

In 2018, the trial court held an evidentiary hearing at which both Gyulnazaryan and his original trial counsel testified.  Both were subjected to cross-examination by the district attorney.  Prior to the hearing, the district attorney orally opposed the motion under section 1016.5, acknowledged there were "several [other] mechanisms" for relief including section 1473.7, but argued he was not prepared to address any avenue other than section 1016.5.  The court overruled the district attorney and proceeded with the evidentiary hearing.

Original trial counsel testified first, explaining, "My first time meeting [Gyulnazaryan] was on that same date that the change of plea was done."  Counsel first "filled out the [plea] form at [the] counsel table."  He then "went outside and informed [Gyulnazaryan] of the proposed offer and idea behind the change of plea."  He also reviewed the preliminary hearing transcript, particularly noting the absence of an interpreter at that hearing.

---

[1] Undesignated statutory references are to the Penal Code.

2.

Trial counsel believed Gyulnazaryan was a United States citizen because he needed "to go to the social security." Counsel described explaining the plea form to Gyulnazaryan as follows: "I summarized the form. I would say glossed over would be the best way to describe it." He agreed with the district attorney "that the exposure would be high if" the case proceeded to trial, and the proposed offer was a favorable resolution. In trial counsel's professional estimation, "[T]he strength of [the] case was very strong towards conviction given [Gyulnazaryan's criminal] history and given the location of where the guns were found and the amount of narcotics seized."

The court also questioned trial counsel. A pertinent exchange follows:

"Q: And on the consequences of the plea it states, 'If I am not a citizen, my change of plea could result in my deportation, exclusion from admission in the United States and/or denial of naturalization. Deportation is mandatory for some offenses. I have fully discussed this matter with my attorney and understand the serious immigration consequences of my plea.' And apparently your client initialed that box, did he not?

"A: He did.

"Q: And then at the end where it says, 'I declare under penalty of perjury under the laws of the State of California that I have read, understood and initialed each item above and everything on the form is true and correct,' he dated and … signed that; is that correct?

"A: That's correct.

"Q: And then you signed under lawyer statement, 'I am the lawyer of record for the defendant. I have gone over this form with my client. I have explained each of the defendant's rights to the defendant and answered all of the defendant's questions with regard to this plea. I have discussed the facts of the defendant's case with the defendant and explained the consequences of this plea, the elements of the offenses and possible defenses. I concur in this plea and the defendant's decision to waive his constitutional rights,' and you signed and dated that?

"A: Yes.

"Q: Is that – was that statement by you accurate?

3.

"A: It's accurate except for the fact that I did not … as a consequence I did not contemplate or have a discussion with my client with regard to his immigration status other than reading the portion of the change of plea form on that box."

After a few more questions, Gyulnazaryan took the witness stand and went straight into cross-examination by the district attorney.

Gyulnazaryan testified he needed an interpreter when he pled to the charges but was too embarrassed to ask for one. Immigration concerns did not "cross [his] mind" because he "came here legally and … had a green card," and because he "was a kid." He did not know he would be deported by settling his case. His attorney never told him, as written on the plea form, " 'Deportation is mandatory for some offenses.' " Every other part of the form was read. He would not have pled no contest if knew he would be deported because that would be "suicide."

Like with trial counsel, the court questioned Gyulnazaryan. The following exchange is particularly relevant:

"Q: I'm looking at my copy which was submitted by your attorney, and this relates to the change of plea form that your attorney filled out and ostensibly you read or had read to you. This one item on the consequences of your plea, number two, I'm going to read it to you: 'If I am not a citizen, my change of plea could result in my deportation, exclusion from admission to the United States and/or denial of naturalization. Deportation is mandatory for some offenses. I have fully discussed this matter with my attorney and understand the serious immigration consequences of my plea.' Was that read to you by your attorney?

"A: No. Not at all.

"Q: Did you read it yourself?

"A: No.

"Q: Then why did you initial it in the box where it says 'Initials'?

"A: He said he would explain this. He said it's very standard. He summarized it and then had me initial it. He said if 'you understood everything I explained.' I said 'Yes.' Then he said, 'You can sign.'

4.

"Q: Did you understand that portion?

"A: He didn't talk about that part at all.

[¶] … [¶]

"Q: So did you or didn't you review the change of plea form?

"A: As far as I understood we did. He just went over it and he told me that I could plead no contest, and I agreed. And I was told, 'If you understood everything, say "yes,"' but I wouldn't have known that there was something left out and that it was such a big thing, that it was worse than the whole case itself.

"Q: And then finally if I understood your previous question and answer, let's assume that if you would have gone to trial – a jury trial and [had] been convicted of the charges and let's say you would have received 15 years in prison, is that a risk you would take in order to possibly have a chance at winning the case even if it was only a one percent chance –

"A: Yes. Yes.

"Q: -- to avoid the immigration consequences?

"A: Yes, of course."

Gyulnazaryan then confirmed he would proceed to trial if necessary. No more testimony was provided at the hearing.

The court then discussed with counsel whether section 1016.5 was the appropriate vehicle for relief. The district attorney adamantly opposed section 1016.5 relief because Gyulnazaryan was advised of immigration consequences in the written plea form. He also opposed construing the motion as a writ proceeding. The court expressed its "inclination … to make a global determination" and invited the parties to brief the issue. The district attorney restated his objection. The matter was set over 77 days for a ruling.

In the interim, the district attorney filed a written opposition to the motion and any alternative writ ground. Two days before the ruling, Gyulnazaryan filed a reply and raised section 1473.7 for the first time.

5.

At the ruling, the district attorney objected to section 1473.7 because there was inadequate notice. He argued that if the court allowed Gyulnazaryan to proceed under that section he would nonetheless fail because *Padilla v. Kentucky* (2010) 559 U.S. 356 (*Padilla*) does not apply retroactively.[2] In other words, Gyulnazaryan's trial counsel was not constitutionally ineffective because he was not—at the time of the plea in 2005—required to provide certain immigration advice. The district attorney acknowledged the section 1016.5 issues "bleed over to the [section] 1473.7" and the evidence under each section would be substantially, if not completely, identical.

After hearing additional arguments, the court granted relief under both sections 1016.5 and 1473.7. The court also made two factual findings: (1) Gyulnazaryan did not understand the immigration consequences related to his no contest plea, and (2) trial counsel was constitutionally ineffective.

## DISCUSSION

This appeal presents three issues. Was the section 1473.7 motion procedurally defective due to inadequate notice? Did the court properly grant relief? Does a plea form with written immigration advice necessarily bar relief under section 1016.5? (See, e.g., *People v. Ramirez* (1999) 71 Cal.App.4th 519, 521 ["a validly executed waiver form is a proper substitute for verbal admonishment by the trial court."].) We conclude the court properly granted relief pursuant to section 1473.7 and the section was properly invoked. Accordingly, we need not resolve the section 1016.5 issues.[3]

At the outset, we address the procedural issue regarding inadequate notice of the section 1473.7 motion. We note the district attorney "does not claim any prejudice based on" inadequate notice. (*People v. Astorga-Lider* (2019) 35 Cal.App.5th 646, 652

---

[2] *Padilla* imposed an affirmative duty on defense counsel to provide "correct [immigration] advice" "when the deportation consequence is truly clear." (*Padilla, supra,* 559 U.S. at p. 369.)

[3] Sections 1016.5 and 1473.7 accomplish the same goal: Vacating a plea based upon inadequate immigration advice.

(*Astorga-Lider*).)  Indeed, the district attorney acknowledged the issues and evidence involved were materially identical regardless of which statute was invoked.  Importantly, the district attorney was able to cross-examine the witnesses under oath and argue against both statutory bases.  And, knowing the court intended to make a "global determination," had nearly three months to prepare for its ruling.

The district attorney "does not point to any argument he was unable to make.  Accordingly, it would be a waste of judicial economy and resources to reverse the superior court's order on this highly technical ground, only to have the parties make the same arguments below.  Therefore, we determine [the district attorney's] claim of procedural improprieties is without merit."[4]  (*Astorga-Lider, supra,* 35 Cal.App.5th at p. 652.)

Turning to section 1473.7 itself, it provides, as relevant:

"(a)  A person who is no longer in criminal custody may file a motion to vacate a conviction or sentence for any of the following reasons:

"(1)  The conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere.  A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel."

[¶]…[¶]

"(e)  When ruling on the motion:

"(1)  The court shall grant the motion to vacate the conviction or sentence if the moving party establishes, by a preponderance of the evidence, the existence of any of the grounds for relief specified in subdivision (a).  For a

---

[4]     In any event, the district attorney raised this issue first in the reply brief.  "It is axiomatic that arguments made for the first time in a reply brief will not be entertained because of the unfairness to the other party."  (*People v. Tully* (2012) 54 Cal.4th 952, 1075.)

motion made pursuant to paragraph (1) of subdivision (a), the moving party shall also establish that the conviction or sentence being challenged is currently causing or has the potential to cause removal or the denial of an application for an immigration benefit, lawful status, or naturalization."

[¶]…[¶]

"(4)  When ruling on a motion under paragraph (1) of subdivision (a), the only finding that the court is required to make is whether the conviction is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere.  When ruling on a motion under paragraph (2) of subdivision (a), the court shall specify the basis for its conclusion."

"[T]o establish a 'prejudicial error' …, a person need only show by a preponderance of the evidence:  (1) he did not 'meaningfully understand' or 'knowingly accept' the actual or potential adverse immigration consequences of the plea; and (2) had he understood the consequences, it is reasonably probable he would have instead attempted to 'defend against' the charges."  (*People v. Mejia* (2019) 36 Cal.App.5th 859, 862 (*Mejia*).)

"We independently review the order denying [or granting] the motion to vacate which ' "presents a mixed question of fact and law." ' "  (*People v. DeJesus* (2019) 37 Cal.App.5th 1124, 1133 (*DeJesus*).)  "This standard requires that '[w]e accord deference to the trial court's factual determinations if supported by substantial evidence in the record, but exercise our independent judgment in deciding whether the facts demonstrate trial counsel's deficient performance and resulting prejudice to the defendant.' "  (*People v. Vivar* (2019) 43 Cal.App.5th 216, 224, review granted March 25, 2020, S260270 (*Vivar*).)

" ' "[T]he power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor the exercise of that power, and the trial court's findings on such matters, whether express or implied, must be upheld if they are supported by substantial evidence." ' "  (*People v. Uribe* (2011) 199 Cal.App.4th 836, 856.)

8.

"In order to satisfy [the] burden to prove prejudice, 'the defendant must provide a declaration or testimony stating that he or she would not have entered into the plea bargain if properly advised. It is up to the trial court to determine whether the defendant's assertion is credible, and the court may reject an assertion that is not supported by an explanation or other corroborating circumstances.' [Citation.] In determining whether a defendant meets this burden '[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. [Rather, they] should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.' " (*Vivar, supra,* 43 Cal.App.5th at p. 229.)

"The probability of obtaining a more favorable result at trial is one factor to consider in evaluating prejudice, but it is not necessarily the determinative factor. [Citation.] As the United States Supreme Court recently explained …, it could be reasonably probable that a defendant 'would have rejected any plea leading to deportation—even if it shaved off prison time—in favor of throwing a "Hail Mary" at trial,' where 'avoiding deportation was *the* determinative factor for [the defendant].' " (*People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 78.)

With these principles in mind, we address the district attorney's various concerns relating to causation, Gyulnazaryan's credibility, the court's ruling, and trial counsel's duty in regard to immigration advice. Initially, the district attorney "doubt[s] that the alleged immigration consequences are the result of the conviction in this instant case due to [Gyulnazaryan]'s lengthy criminal history." This argument ignores that Gyulnazaryan was deported only after the conviction at issue and that deportation is mandatory "for all controlled substances convictions except for the most trivial of marijuana possession offenses." (*Padilla, supra,* 559 U.S. at p. 368.) We find no issue with causation.

Next, the district attorney believes Gyulnazaryan "had been made aware of potential immigration consequences as he was informed by the court on his prior

9.

convictions, one of which occurred just two years prior to this instant case." This argument misses the point. The question is whether he understood the potential consequences of the conviction at issue. "A defendant entering a guilty plea may be aware that some criminal convictions may have immigration consequences as a general matter, and yet be unaware that a conviction for a specific charged offense will render the defendant subject to mandatory removal." (*People v. Patterson* (2017) 2 Cal.5th 885, 895.)

Indeed, the prior conviction the district attorney references was for a different class of crime.[5] Accordingly, whether Gyulnazaryan knew *that* conviction may have had immigration consequences has no bearing on whether *this* conviction had immigration consequences.

The district attorney also attacks the trial court's ruling. The court impliedly found Gyulnazaryan credible and expressly found he did not understand the immigration consequences of his plea. That determination is entitled to deference because it is supported by substantial evidence: Gyulnazaryan testified as much, and his trial counsel largely corroborated his testimony. The court further impliedly credited trial counsel's testimony by expressly finding him ineffective based on his testimony. This credibility determination is likewise entitled to deference.

Importantly, the trial court asked Gyulnazaryan if he would risk many more years in prison for an unrealistic chance to avoid immigration consequences. He answered yes, and the court believed him. The trial court here was vested with the sole duty and power to determine credibility. (*People v. Martinez* (2013) 57 Cal.4th 555, 565.) Neither the district attorney nor this court may substitute a different view of credibility in place of the trial court's resolution. Put simply, the court found Gyulnazaryan credible and nothing more was required. (§ 1473.7, subd. (e)(4) ["When ruling on a motion under paragraph

---

[5]     That prior conviction was for grand theft person, section 487, subdivision (c).

10.

(1) of subdivision (a), the only finding that the court is required to make is whether the conviction is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere."].)

Finally, the district attorney argues Gyulnazaryan's trial counsel could not have been ineffective because the plea occurred before the United States Supreme Court decided *Padilla, supra*. (See *Chaidez v. United States* (2013) 568 U.S. 342, 344 [*Padilla* does not have retroactive effect].) This argument conflates the law. "[T]he moving party 'need not establish ineffective assistance of counsel,' and 'even if the motion is based upon errors by counsel, the moving party need not also establish a Sixth Amendment violation as by demonstrating that "counsel's representation 'fell below an objective standard of reasonableness' " " 'under prevailing professional norms.' " ' " (*DeJesus, supra,* 37 Cal.App.5th at p. 1133.) The "defendant's own error" in misunderstanding—or complete failure to anticipate—the immigration consequences of a plea bargain is an independent basis sufficient to grant relief under section 1473.7. (*People v. Camacho* (2019) 32 Cal.App.5th 998, 1009; *Mejia, supra,* 36 Cal.App.5th at pp. 870-871.) Whether or not trial counsel was truly ineffective in the Sixth Amendment sense is, on this record, irrelevant.

## DISPOSITION

The judgment is affirmed.

SMITH, J.

WE CONCUR:

HILL, P.J.

MEEHAN, J.