Filed 7/26/19

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B293096 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA068940) |
| v. | |
| NICOLAS DEJESUS, | |
| Defendant and Appellant. | |


APPEAL from an order of the Superior Court of Los Angeles County, Lisa Mangay Chung, Judge. Affirmed.

Ruzanna Poghosyan for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Zee Rodriguez and Paul S. Thies, Deputy Attorneys General, for Plaintiff and Respondent.

Nicolas DeJesus (DeJesus) appeals an order denying his motion to vacate and withdraw his 2016 plea of no contest to assault with a firearm. (Pen. Code, § 245, subd. (a)(2).)[1] He contends that although his trial attorney advised him of the immigration consequences of his plea, he rendered ineffective assistance of counsel by refusing to try his case, failing to investigate the facts, and failing to negotiate an immigration-neutral disposition. (§ 1473.7, subd. (a)(1).) We conclude that DeJesus's plea was not legally invalid as he does not offer sufficient evidence of a prejudicial error which damaged his ability to defend against the adverse immigration consequences of his plea. (*Strickland v. Washington* (1984) 466 U.S. 668, 688; *People v. Camacho* (2019) 32 Cal.App.5th 998 (*Camacho*).) Furthermore, based upon DeJesus's custodial status, he is not eligible for relief under the statute. We therefore affirm.

## BACKGROUND

DeJesus immigrated from the Philippines in 1992 and is a permanent legal resident. He is married to a United States citizen and is a father to seven children, all United States citizens.

On June 15, 2016, DeJesus bought a refrigerator from a Home Depot store.[2] He put it in his vehicle and returned to the store with the receipt. He selected another refrigerator, approached the cashier, showed her the receipt, advised her that he already purchased the refrigerator, and purchased trash bags.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] Because DeJesus pled no contest prior to trial, the facts are from the preliminary hearing transcript. The loss prevention agent testified at the preliminary hearing.

2

While exiting the store, a loss prevention agent apprehended him. DeJesus initially complied with the agent's commands, but then attempted to flee on foot. The agent struggled with DeJesus, handcuffed him, and escorted him back into the store. DeJesus drew a loaded .22-caliber pistol from his pocket and pointed it at the agent. The agent succeeded in subduing and disarming him, and police recovered the loaded pistol.

DeJesus was charged with assault with a firearm (§ 245, subd. (a)(2)), shoplifting (§ 459.5), and an enhancement for personal use of a firearm (§ 12022.5). Pursuant to a plea agreement, DeJesus pled no contest to one count of assault with a firearm (§ 245, subd. (a)(2)) in exchange for the high term of four years in the state prison. The trial court dismissed the shoplifting charge and the firearm use enhancement.

During his change of plea hearing, there was a specific colloquy about immigration consequences and DeJesus acknowledged understanding them. The trial court advised, "[i]f you are not a citizen of the United States, your plea would result in your deportation, exclusion from admission into the United States and denial of naturalization." DeJesus denied having been forced or threatened to plead no contest.

The charge to which DeJesus pled is an aggravated felony under federal immigration law, subjecting him to permanent removal from the United States.[3] Approximately one year after his plea and sentencing hearing, federal authorities initiated

---

[3] On appeal, he avers, and the People do not dispute, that assault with a firearm pursuant to section 245, subdivision (a)(2) is an aggravated felony for purposes of federal immigration law, and subjected him to permanent removal from the United States.

removal proceedings against him.[4]  After serving his state prison sentence, United States Immigration and Customs Enforcement (ICE) took him into custody.

He moved to vacate his plea pursuant to section 1473.7, subdivision (a)(1) on July 6, 2018.  He argued that although his trial attorney properly advised him of the immigration consequences, he failed to defend against them by going to trial, thoroughly investigating the case, or exploring alternative dispositions.  Along with his own declaration, DeJesus submitted records regarding his legal status and a declaration from his post-conviction attorney.

DeJesus's post-conviction attorney declared that the trial attorney's file did not contain any notes or research about an alternative plea.  The file notes indicated that the trial attorney had advised DeJesus that the struggle with the gun was out of the camera's view, and that she did not see DeJesus pull the gun out of his pocket and point it at anyone.  DeJesus did not submit a declaration from his trial attorney.

In support of his motion to vacate, DeJesus declared that his trial attorney, a public defender, refused to take the case to trial, instead telling him "he would have to hire a good criminal defense attorney to fight the case."  The trial attorney also warned him that he could face 14 years in the state prison if he rejected the prosecutor's offer.  DeJesus further declared that he could not afford to hire an attorney.

The trial court denied the motion.  It acknowledged that advisement of immigration consequences "may not be totally determinative of the issue," and that it had not been presented

---

[4]     DeJesus's application for asylum was denied on May 17, 2018.

4

with any evidence from DeJesus's trial attorney. The trial court ruled that DeJesus had failed to show prejudice on ineffective assistance of counsel grounds, or by "showing that he would have rejected the plea bargain had he known of the adverse immigration consequences."

## DISCUSSION

DeJesus sought relief under section 1473.7, subdivision (a)(1), which allows a person who is no longer in criminal custody to move to vacate a conviction if it is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully defend against the actual or potential adverse immigration consequences of a no contest plea.

I. *History of section 1473.7*

Effective January 1, 2017, the Legislature passed Assembly Bill No. 813 (2015–2016 Reg. Sess.) adding section 1473.7 to the Penal Code. (Stats. 2016, ch. 739, § 1.) The section provided relief to those people who were "no longer imprisoned or restrained." (§ 1473.7.) According to the author, the bill was necessary because at the time, "under California law, there [was] no vehicle . . . for a person who is no longer in actual or constructive custody to challenge his or her conviction based on a mistake of law regarding immigration consequences or ineffective assistance of counsel in properly advising of these consequences when the person learns of the error post-custody." (Sen. Com. on Public Safety, Com. on Assem. Bill No. 813 (2015–2016 Reg. Sess.) July 7, 2015, at p. 6.)

In 2018, the Legislature amended section 1473.7 effective January 1, 2019. (Stats. 2018, ch. 825, § 2.) The amendment changed the aforementioned language and now provides in

relevant part:  "A person who is *no longer in criminal custody* may file a motion to vacate a conviction."  (§ 1473.7, subd. (a)(1), italics added.)  The issue therefore is what the italicized language means.

The interpretation of a statute is a question of law that we review de novo.  (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332.)  To determine the most reasonable interpretation of a statute, we look to its legislative history and background.  (*Ibid*.)  " 'As in any case involving statutory interpretation, our fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose.  [Citation.]  We begin by examining the statute's words, giving them a plain and commonsense meaning.  [Citation.]  We do not, however, consider the statutory language "in isolation."  [Citation.]  Rather, we look to "the entire substance of the statute . . .  in order to determine the scope and purpose of the provision . . . .  [Citation.]"  [Citation.]  That is, we construe the words in question " 'in context, keeping in mind the nature and obvious purpose of the statute. . .  .'  [Citation.]"  [Citation.]  We must harmonize "the various parts of a statutory enactment . . .  by considering the particular clause or section in the context of the statutory framework as a whole." ' "  (*Camacho, supra,* 32 Cal.App.5th at pp. 1006–1007.)

In enacting the 2018 amendment, the Legislature declared, that its intent was to give courts the authority to rule on motions filed pursuant to section 1473.7, "provided that the individual is no longer in criminal custody."  (Stats. 2018, ch. 825, § 1(e).)  The stated purpose of the clarification was to "ensure uniformity throughout the state and efficiency in the statute's implementation."  (Stats. 2018, ch. 825, § 1(b).)

6

It is a settled principle of statutory construction that the Legislature " ' "is deemed to be aware of statutes and judicial decisions already in existence, and to have enacted or amended a statute in light thereof." ' " (*People v. Scott* (2014) 58 Cal.4th 1415, 1424.) "Courts may assume, under such circumstances, that the Legislature intended to maintain a consistent body of rules and to adopt the meaning of statutory terms already construed." (*Ibid.*)

A month before the Governor signed the amendment into law, the First Appellate District issued *People v. Cruz-Lopez* (2018) 27 Cal.App.5th 212 (*Cruz-Lopez*). There, the appellate court reasoned that section 1473.7 "has a role in protecting a person's immigration status in matters that arise years or even decades after the underlying criminal conviction. The statute seems applicable after other and more traditional collateral relief measures are not available. Generally, a petition for writ of habeas corpus or section 1016.5 relief are the means available to an appellant who is in custody or restrained and wishes to withdraw his plea because he was not advised of immigration consequences of his plea. [Citations.] Section 1473.7 permits persons unable to assert habeas corpus or section 1016.5 claims to have standing to challenge a conviction. To obtain relief per this statute, the individual cannot be in custody or under restraint." (*Cruz-Lopez*, at pp. 220–221.)

*Cruz-Lopez* relied upon long standing decisional law expanding the application for petitions for writ of habeas corpus to include persons who were determined to be in "constructive custody." (*Cruz-Lopez*, *supra*, 27 Cal.App.5th at pp. 220–221.) That law supported the court's conclusion that the definition of " 'constructive custody' " included people on probation and parole.

7

(*Ibid.*, citing *People v. Villa* (2009) 45 Cal.4th 1063, 1069 (*Villa*).) In *Villa*, our Supreme Court explained: "the habeas corpus petitioner is deemed to be in constructive custody because he or she 'is subject to "restraints not shared by the public generally" [citations] and 'may later lose his liberty and be eventually incarcerated.' " (*Villa*, at p. 1069.) "Once a defendant has been released and is no longer subject to parole or probation, he or she is no longer in constructive custody." (*People v. Mbaabu* (2013) 213 Cal.App.4th 1139, 1149.) The court in *Cruz-Lopez* held that section 1473.7, subdivision (a) is not applicable to a person on probation at the time the motion is presented because they are necessarily "imprisoned or restrained," within the meaning of the statute. (*Cruz-Lopez*, at pp. 220–221.)

II. *DeJesus is not entitled to relief*

    A. It appears DeJesus is not eligible for relief pursuant to section 1473.7

The People contend that the trial court properly denied DeJesus's motion because he was a parolee at the time the motion was filed and was thus in constructive custody within the meaning of the statute. Although they did not address the amended statute in their briefs, the People rely on *Villa*, *supra*, 45 Cal.4th at page 1069, and *In re Jones* (1962) 57 Cal.2d 860, in support of their contention. In *Jones*, a habeas corpus proceeding, our high court stated, "[a]ctual detention in prison is not an indispensable condition precedent to the issuance of habeas corpus, and persons on parole or on trial are, in a proper case, entitled to its issuance." (*Id.* at p. 861, fn. 1.)

DeJesus does not deny that he was on parole at the time the motion was filed. He argues that a plain reading of the statute does not exclude people on parole, and that to do so would

be unsupported by the legislative intent.  As described, *ante*, DeJesus's interpretation lacks merit.

At his change of plea hearing, the trial court informed DeJesus that, upon his release from state prison, he would be placed on parole for up to three years.  "[A] parole term is a component of the inmate's original sentence, and parolees remain in the constructive custody of the [California Department of Corrections and Rehabilitation] for the duration of their fixed parole terms and are not formally 'discharged' from the department's custody until the expiration of the parole term." (*In re E.J.* (2010) 47 Cal.4th 1258, 1282, fn. 9.)  DeJesus was sentenced to serve a four-year state prison sentence on July 19, 2016.[5]  On July 6, 2018, less than two years later, he filed the motion to vacate his plea.  Thus, although not raised in the trial court, it appears that DeJesus was on parole and therefore was a person in "criminal custody" when the motion was filed.  As explained, to be eligible for relief pursuant to section 1473.7, DeJesus cannot be in custody.  Based upon existing law at the time of DeJesus's motion, the legislative intent, and clarification of the statute through the subsequent amendment, we conclude that people on parole are not eligible for relief pursuant to section 1473.7.

---

[5]    DeJesus was awarded 69 days of credit for time spent in custody, and was not ordered to serve his sentence in the county jail pursuant to section 1170, subdivision (h)(1) or (2).  These facts further show that he was on parole at the time ICE detained him.

B. DeJesus does not offer sufficient evidence of a prejudicial error

Even if DeJesus were eligible for relief, the trial court properly denied his motion on the merits. He contends that he was deprived of the effective assistance of counsel because counsel refused to try his case to a jury, failed to review a video of the incident or to investigate an "immigration safe plea." However, he fails to offer sufficient evidence of counsel's error, or resulting prejudice.

At the time DeJesus filed his motion, section 1473.7, subdivision (a)(1) provided in relevant part, "[a] person no longer imprisoned or restrained may prosecute a motion to vacate a conviction . . . [¶] . . . [that] is legally invalid due to a prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of . . . nolo contendere." The existence of any of the grounds for relief specified in subdivision (a)(1) must be established by a preponderance of the evidence. (Former § 1473.7, subd. (e)(1).)

We independently review the order denying the motion to vacate which " 'presents a mixed question of fact and law.' " (*In re Resendiz* (2001) 25 Cal.4th 230, 248; see *People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 76.) We defer to the trial court's factual determinations if supported by substantial evidence, but exercise our independent judgment to decide whether the facts demonstrate deficient performance and resulting prejudice. (*Resendiz*, at p. 249.)

As first enacted, section 1473.7, subdivision (a)(1) required DeJesus to demonstrate that (1) counsel's performance fell below an objective standard of reasonableness under prevailing norms,

10

as well as (2) a reasonable probability of a different outcome if counsel had rendered effective assistance.  (*Camacho*, *supra*, 32 Cal.App.5th at p. 1005.)  However, in 2018, the amendment added the following language to section 1473.7, subdivision (a)(1): "[a] finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel."  (Stats. 2018, ch. 825, § 2.)

In enacting the measure, the Legislature clarified that the moving party "need not establish ineffective assistance of counsel," and "even if the motion is based upon errors by counsel, the moving party need not also establish a Sixth Amendment violation as by demonstrating that 'counsel's representation "fell below an objective standard of reasonableness" ' ' "under prevailing professional norms." ' "  (*Camacho*, *supra*, 32 Cal.App.5th at p. 1008.)

*Camacho* recognized that the amendment unhinged the requirement of an ineffective assistance of counsel finding from a section 1473.7 claim and requires defendant "only to show that one or more of the established errors were prejudicial and damaged his 'ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of [his] plea.' "  (*Camacho*, *supra*, 32 Cal.App.5th at p. 1009.)  To show prejudice, a person must show "by a preponderance of evidence that he would never have entered the plea if he had known that it would render him deportable." (*Id.* at pp. 1011–1012; *People v. Martinez* (2013) 57 Cal.4th 555, 565; *Jae Lee v. United States* (2017) 582 U.S. __ [137 S.Ct. 1958, 1968–1969] (*Lee*); *People v. Ogunmowo, supra*, 23 Cal.App.5th at p. 81.)

11

To obtain relief, DeJesus must show by a preponderance of the evidence that the plea was legally invalid due to a prejudicial error. The statute defines error as one that damaged his ability to meaningfully defend against the actual or potential adverse immigration consequences of his plea. To show prejudice, DeJesus must establish that he would not have entered the plea if he had known it would render him deportable. In assessing the latter element, courts should look to "contemporaneous evidence to substantiate a defendant's expressed preferences." (*Lee*, *supra*, 582 U.S. __ [137 S.Ct. at p. 1967.])

i. *The trial attorney's refusal to try the case*

DeJesus first contends that his trial attorney's refusal to try his case to a jury damaged his ability to meaningfully defend against his immigration consequences. Presumably, this is because the outcome of a jury trial might have resulted in an acquittal, or, in his view, something less than a deportable offense. He stated via declaration at the evidentiary hearing that his trial attorney warned that if he rejected the prosecutor's offer to plead to the assault alleged in count 1, he would face 14 years in state prison.[6] He declared that although his public defender advised him that his plea "might subject [him] to deportation," he would "have to hire a good criminal defense attorney to fight the case" if he wanted to go to trial. DeJesus declared that he could not afford a private attorney, but wished to "fight [his] case and to take it to a jury trial." He told his lawyer that he "would take

---

[6] At the time of the plea, DeJesus was charged in count 1 with assault with a firearm (§ 245, subd. (a)(2)) which carried a maximum of four years in the state prison, and a firearm use enhancement (§ 12022.5, subds. (a) & (d)) which would have exposed him to 10 additional years in the state prison.

12

responsibility for the crime [he] committed, like taking the refrigerator or possessing a gun, but [he] could not take responsibility for a crime that [he had] not committed."

During the plea colloquy, DeJesus, assisted by a Tagalog interpreter, was asked by the trial court whether anyone "made any other promises to you or tried in any way to force you to plead no contest to this felony charge," or "threatened you or anyone close to you to get you to do so?" As to both questions, DeJesus answered, "No," and never reported his trial attorney's threat of abandonment to the trial court. Moreover, DeJesus never declared or stated during the plea colloquy or at the evidentiary hearing that the immigration consequences of his plea played any role in his desire for a jury trial. To the contrary, he declared that his primary concern was the weakness he perceived in the case, and his belief that he was not guilty of the charges.

"Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. [Rather, they] should look to contemporaneous evidence to substantiate a defendant's expressed preferences." (*Lee*, *supra*, 582 U.S. __ [137 S. Ct. at p. 1967.]) While his trial attorney's purported threat to cease representation is of concern, it is not corroborated by any contemporaneous evidence. DeJesus's declaration also contradicted his prior statement at the change of plea hearing. Moreover, despite apparent conversations between the post-conviction attorney and the trial attorney, DeJesus did not offer testimony or a declaration on behalf of the latter attorney. DeJesus has not offered sufficient evidence of his insistence on going to trial.

ii. *The trial attorney's failure to investigate the facts of the case*

Next, DeJesus contends that the trial attorney rendered deficient assistance by failing to exploit weaknesses he perceived in the security camera footage, specifically, that the struggle with the gun was not caught on tape. In support of this claim, DeJesus declared that his trial attorney advised him "that he reviewed the recording and that the struggle with the gun was out of the camera view." DeJesus's post-conviction attorney confirmed that she also reviewed the video and "did not see Mr. DeJesus pulling the gun out of his pocket and pointing it at anyone." She asserts in her declaration that when she spoke with the trial attorney nearly two years after the preliminary hearing he could not remember when he received the video footage of the incident from the district attorney's office. DeJesus suggests that these facts show that his trial attorney did not review the video prior to the preliminary hearing. Again, DeJesus does not provide any evidence from the trial attorney.

Moreover, the declarations fail to address the fact that two material witnesses testified at the preliminary hearing on behalf of the People. The victim of the assault identified DeJesus as the perpetrator, described the theft and struggle, identified the gun, and affirmed that DeJesus pointed it at him. The deputy sheriff who responded testified that he obtained the firearm from the victim, and that it was loaded with five .22-caliber rounds. DeJesus's suggestion that the video footage revealed weaknesses in the case, or that his trial attorney failed to review them are not supported by the evidence.

iii. *The trial attorney's failure to investigate an immigration-safe disposition*

14

DeJesus next contends that his public defender's failure to negotiate an immigration safe disposition similarly affected his ability to defend against the immigration consequences. In support of this claim, his post-conviction attorney declared that the defense file did not contain notes or any research about an alternative plea to sections 25400[7] or 25850.[8]

In support of this contention, DeJesus relies upon *People v. Bautista* (2004) 115 Cal.App.4th 229, 240–242, which held that "[d]efense attorneys are required to try to defend against the negative immigration consequences of a guilty plea by exploring alternative dispositions that can mitigate the harm." In *Bautista*, the defendant filed a petition for writ of habeas corpus contending that his trial counsel's representation fell below the standard for effective assistance of counsel based upon his failure to advise him that deportation and exclusion from readmission was mandatory in his case under federal law. (*Id.* at p. 237.) In *Bautista*, the defendant offered into evidence statements from three witnesses. First, he offered a declaration from his trial attorney who admitted that he sought a lenient sentence as

---

[7] Section 25400 states in relevant part, "(a) [a] person is guilty of carrying a concealed firearm when the person does any of the following: [¶] . . . [¶] (2) Carries concealed upon the person any pistol, revolver, or other firearm capable of being concealed upon the person."

[8] Section 25850 states in relevant part, "(a) [a] person is guilty of carrying a loaded firearm when the person carries a loaded firearm on the person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory."

15

opposed to an immigration neutral disposition. (*Id.* at p. 238.) Second, an immigration law expert testified that he believed the prosecution would have accepted a plea to a greater, immigration neutral charge. (*Id.* at p. 240.) Finally, the defendant in *Bautista* himself declared that he would not have agreed to enter a plea if he had known the immigration consequences. (*Ibid.*) The appellate court issued an order to show cause to the trial court for a reference hearing. (*Id.* at p. 242.)

Unlike *Bautista*, DeJesus fails to offer any affirmative evidence from which a reasonable fact-finder could conclude that his trial attorney failed to negotiate or consider an immigration neutral disposition. He did not offer any evidence from the prosecutor, his public defender, or an immigration expert on this point. Furthermore, he fails to identify any "immigration-neutral disposition to which the prosecutor was reasonably likely to agree." (*People v. Olvera* (2018) 24 Cal.App.5th 1112, 1118.) The only evidence in support of DeJesus's claim is his post-conviction attorney's observation of an omission—that she reviewed the file and saw that it did not contain notes or research about an alternative plea to sections 25400 or 25850. DeJesus's claim that his trial attorney erred by failing to investigate an immigration-neutral disposition is not supported by sufficient evidence.

C. Prejudice

Even assuming DeJesus's counsel erred, DeJesus fails to show prejudice. To support his claim, he must demonstrate "by a preponderance of evidence that he would never have entered the plea if he had known that it would render him deportable." (*Camacho*, *supra*, 32 Cal.App.5th at pp. 1011–1012.) Similarly, in *Lee*, the defendant sought to vacate his conviction on the ground that, in accepting the plea, he received ineffective

16

assistance of counsel in violation of the Sixth Amendment. (*Lee*, *supra*, 582 U.S. __ [137 S.Ct. at p. 1962.])  To establish prejudice, the defendant was required to show " 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' "  (*Id.* at p. 1964, citing *Hill v. Lockhart* (1985) 474 U.S. 52, 59.)

In *Lee*, both the defendant and his attorney testified that deportation was the determinative issue in Lee's decision whether to accept the plea.  (*Lee*, *supra*, 582 U.S. __ [137 S.Ct. at p. 1963.])  His attorney assured him that he would not be deported.  (*Ibid*.)  In fact, the charge to which he pled subjected him to mandatory deportation.  (*Ibid*.)  Lee's attorney acknowledged that even though he thought Lee's case was weak, if he had known Lee would be deported upon pleading guilty, he would have advised him to go to trial.  (*Ibid*.)  The United States Supreme Court found, "[W]hen the inquiry is focused on what an individual defendant would have done, the possibility of even a highly improbable result may be pertinent to the extent it would have affected the defendant's decisionmaking."  (*Id.* at pp. 1967–1968.)  The high court relied upon "contemporaneous evidence" to substantiate the defendant's expressed preferences such as the "highly unusual" circumstances wherein Lee:  (1) demonstrated that he would have rejected the plea had he known that it would lead to mandatory deportation; (2) testified, along with his attorney, that " 'deportation was the determinative issue' " in plea negotiations; and (3) his responses during the plea colloquy confirmed the importance he placed on deportation.  (*Id*. at pp. 1967–1968.)

Here, no similar showing was made.  DeJesus's wish to reject the plea was not based upon his deportability, but upon his

17

belief that he was not guilty.  At the evidentiary hearing, his post-conviction attorney confirmed that DeJesus was advised of the immigration consequences of his plea to assault and that his motion was based upon deficient performance by the trial attorney, not misadvice.  Thus, DeJesus fails to offer "contemporaneous evidence" that he would have refused to enter the plea if he had known *it would render him deportable.*

We conclude that DeJesus's claim of prejudicial error is not supported by substantial evidence.  He fails to show by a preponderance of the evidence that his plea was "legally invalid" within the meaning of section 1473.7.  The trial court did not err in denying his motion to vacate his plea.

## DISPOSITION

The order is affirmed.
CERTIFIED FOR PUBLICATION


                                        MURILLO, J.*

We concur:


        EDMON, P. J.



        EGERTON, J.

_____

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.