Filed 5/19/21  P. v. Methu CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>WILLY L. METHU,<br><br>    Defendant and Appellant. | E073665<br><br>(Super.Ct.Nos. RIF1605517, RIM1616040, RIM1616041, RIM1616287, RIM1617968, RIM1618227, RIM1700158 & RIM1700387)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  David A. Gunn, Judge. Affirmed.

Kevin Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Banta, Attorneys General, Melissa Mandel and Adrian R. Contreras, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Willy L. Methu filed a motion to withdraw and/or vacate his conviction pursuant to Penal Code section 1016.5,[1] which the court denied. On appeal, defendant contends the court erred in denying his motion. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 10, 2016, defendant attempted to take property from another person by force and/or fear. The People charged defendant by felony complaint with attempted robbery (§§ 664, 211, count 1) and brandishing a knife (§ 417, subd. (a)(1), count 2). The People additionally alleged defendant personally used a deadly weapon in his commission of the count 1 offense (§§ 12022, subd. (b)(1), 1192.7, subd. (c)(23)), was ineligible for probation due to his previous convictions for burglary and felony vandalism, had suffered three prior prison terms (§ 667.5, subd. (b)), and had violated the terms of his mandatory supervision by his commission of the charged offenses (§§ 1170, subd. (h), 1203.2, subd. (b)).

On February 28, 2017, defendant pled guilty to attempted robbery (§§ 664, 211, count 1) and admitted suffering a prior prison term (§ 667.5, subd. (b)).[2] On March 10, 2017, pursuant to the negotiated disposition, the court sentenced defendant to an aggregate term of 28 months of imprisonment, consisting of the low term of 16 months

---

[1] All further statutory references are to the Penal Code.

[2] Defendant additionally pled guilty to eight separate misdemeanor offenses in seven separate cases, which included brandishing a knife (§ 417, subd. (a)(1)), interfering with a lawful business establishment (§ 602.1, subd. (a)), trespass (§ 602, subd. (o)), and five cases of petty theft (§ 488). Defendant also admitted that his commission of the offenses constituted a violation of his probation for felony vandalism.

2

on the attempted robbery charge followed by a consecutive, one year on the prior prison term.[3]  Pursuant to the plea agreement, the court dismissed the remaining count and allegations.

On February 7, 2019, defense counsel filed a motion to vacate defendant's conviction pursuant to section 1016.5.  On March 4, 2019, the People filed an opposition.

On March 25, 2019, defendant filed a declaration averring that when he pled guilty, he understood that the conviction "*may* have the consequences of deportation . . . ."  However, "[h]ad I understood that the immigration consequences of pleading guilty to this charge *would* result in deportation, . . . I would have rejected the plea."  "Had I understood [the] immigration consequences of pleading guilty to this charge, I would have been willing to serve additional time in custody if it meant protecting my immigration consequences by pleading guilty to an immigration-safe alternative offense."  "At the time of the plea on the record, I was not advised by the court of *any* immigration consequences."  "At the time of my sentencing hearing, I was not advised by the court of *any* immigration consequences."  "On July 10, 2018, I received . . . an Order of Removal from the United States."

On August 5, 2019, defense counsel filed a revised motion to vacate the judgment under section 1016.5 asserting that the court's failure to advise him of the immigration consequences of the plea constituted prejudicial error.  Defendant declared, "I am a citizen of Kenya, born on July 10, 1985."  "I first came to the United States on July 24,

---

[3]  The court sentenced defendant to time served or concurrent sentences on all seven of the misdemeanor cases.

3

1987, when I was two (2) years old." "I became a Lawful Permanent Resident on December 12, 1998, at the age of 13." Defense counsel attached as an exhibit a notice to appear in removal proceedings alleging defendant was subject to removal for his conviction on February 28, 2017, for second degree attempted robbery.

At the hearing on defendant's motion on August 30, 2019, the court conducted what it described as an "analysis under [section] 1473.7":[4] defendant "received a very favorable disposition." The court found that defendant's statement in his declaration that he would not have accepted the plea agreement if he had been advised by the court that he would have been subject to removal proceedings "a self-serving statement." The court noted that defendant was facing exposure in the instant case alone, not including his seven additional misdemeanor cases, of over six years in prison if he took the matter to trial; the court also noted that the plea lowered his exposure to only two years four months of imprisonment.

The court found defendant's contention "that he would have received a more favorable" immigration-safe negotiated disposition "just not believable." "I believe that [the] seven misdemeanors would probably make him eligible for deportation, also, with several offenses. He would have had to have gone to trial on all seven misdemeanors. He would have to have been successful on the attempt[ed] [robbery] with the use of a knife. Again, he took advantage of a very favorable plea disposition to receive 16 months and one prison prior."

---

[4] Defense counsel neither cited nor argued for relief pursuant to section 1473.7 in either motion.

The court found that any error had not been prejudicial: "I don't think that he's made that type of showing. Again, when there is an unlikelihood of an acquittal, in this case, for example, the attempt[ed] [robbery], if he had taken the stand in his own defense, he would have been impeached with the three prison priors that he had for all theft offenses." "I don't believe that he would have received a more favorable disposition that would have resulted in not being deported or subject to deportation." The court denied the motion.

Defense counsel then asked to be heard, to which the court acquiesced. Defense counsel noted that defendant "was not advised whatsoever on the record of any immigration consequences during—not only during—at the time of entering the pleas, but also again at a later date when it came time for sentencing." The court responded, "No, but he signed the plea document advising him of his legal rights, and advising him of the immigration consequences." Defense counsel replied, "He was advised in the sense that he signed and initialed the plea agreements with those advisements, but there was never any advisement whatsoever on the record at either hearing, at the time of the plea, or at the sentencing."

Defense counsel continued, "I think, with all due respect, it's speculation to say that he would [not have] received a more favorable outcome at trial. And he did—in his declaration, he did state that he absolutely would [not have] accepted the offer, but for the lack of advisement of the immigration consequences." "Again, there was absolutely no advisement at either time."

5

The court responded, "Again, the advisements on the plea form have been found to be sufficient on appeal. The issue in [section] 1473.7 is what do you—as you point out, would he have not taken the very favorable plea disposition and have gone to trial on all matters rather than if he had known that he would be deported."

## II. DISCUSSION

On appeal, defendant contends the court erred in denying defendant's motion pursuant to both sections 1016.5 and 1473.7 because he was not adequately advised by the court or counsel of the adverse immigration consequences of his plea. In fact, the overwhelming majority of defendant's arguments on appeal relate to section 1473.7 relief. The People argue defendant forfeited any contention of error under section 1473.7 by failing to raise the issue below. We hold that defendant forfeited any argument under section 1473.7 by failing to raise the issue in either of his motions below or at the hearing on his motion.[5] Moreover, we disagree with defendant's contention that the court erred in denying his motion under section 1016.5.

### A.     *Forfeiture*

Defendant contends the court erred in denying his motion pursuant to section 1473.7 based upon defense counsel's failure to adequately advise defendant of the immigration consequences of his plea. The People maintain defendant forfeited the issue by failing to raise it below. We agree with the People.

---

[5] Assembly Bill No. 813 (2015-2016 Reg. Sess) added section 1473.7 effective January 1, 2017, long before defendant filed either of his motions. (Stats. 2016, ch. 739 § 1.)

"As we have observed on numerous occasions, ""'a constitutional right,' or a right of any other sort, 'may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.'"" (*People v. McCullough* (2013) 56 Cal.4th 589, 593 [Where a party did not raise a claim of error in the court below, a reviewing court will decline to consider the issue.]; see *People v. Carmony* (2004) 33 Cal.4th 367, 375 [failure to invite court to dismiss prior strike conviction pursuant to § 1385 forfeits the right to raise the issue on appeal].)

Here, in the initial motion to vacate the conviction pursuant to section 1016.5, defense counsel argued both *the court's* purported failure to advise of the immigration consequences of the plea and *counsel's* "unreasonable legal representation" in failing his "duty to do something—to speak up—not stand quietly while the court sentenced the defendant, as if nothing relating to the defendant's immigration rights needed advisement." "Counsel had a duty to advise the court of the problem, to take steps to postpone sentencing, or to re-negotiate the guilty plea to a non-deportable offense, or to move to withdraw the guilty plea on the ground it was not voluntarily, knowingly and intelligently entered and to try the case."

In the revised motion,[6] defense counsel argued solely that *the court* had erred in failing to advise defendant of the negative immigration consequences of plea. Defense counsel never cited, mentioned, or argued the applicability of section 1473.7 in either

---

[6] It is unclear to what extent the "revised" motion was meant to supplement or supplant the initial motion.

7

motion or at the hearing on the motion.  Defense counsel's arguments below related solely to *the court's* purported failure to advise defendant of the immigration consequences of his plea, the proper subject for a motion pursuant to section 1016.5:  "the *Court* failed to inform the [defendant] . . . [of] the consequences of deportation . . . ."[7]  "Absent a record that the *court* provided the advisement required by this section , the defendant shall be presumed not to have received the advisement pursuant to . . . [section] 1016.5 . . . ."  Both defendant's declarations aver failures of *the court*, *not counsel*, to advise him of immigration consequences of the plea:  "At the time of the plea on the record, I was not advised by *the court* of **any** immigration consequences."  (First italics added, second italics and boldface in original.)  "At the time of my sentencing hearing, I was again not advised by *the court* of **any** immigration consequences."  (First italics added, second italics and boldface in original.)

Defense counsel never raised the issue of any purported failure of *defense counsel* below to adequately advise defendant of the adverse immigration consequences of his plea, the proper subject for a motion pursuant to section 1473.7.  (*Arendtsz, supra,* 247 Cal.App.4th at p. 619 [Defendant cannot raise a claim of deficient advisement by counsel regarding the immigration consequences of a plea in a section 1016.5 motion.];

---

[7]  Any purported error by defense counsel alleged below was not in *his own* failure to explain the negative immigration consequences of the plea to defendant, but in failing to compel *the court* to give an on-the-record, oral advisement of the negative immigration consequences of the plea, one that is not required by law.  (*People v. Araujo* (2016) 243 Cal.App.4th 759, 762 (*Araujo*) [the § 1016.5 advisement can be in writing; a verbal advisement is not required].)  Moreover, counsel error is not the proper subject of a section 1016.5 motion.  (*People v. Arendtsz* (2016) 247 Cal.App.4th 613, 619 (*Arendtsz*).)

8

*People v. Chien* (2008) 159 Cal.App.4th 1283, 1285 (*Chien*) ["We conclude that section 1016.5 allows a court to vacate a conviction only if the *trial court* has failed to advise the defendant of potential adverse immigration consequences at the time of the plea. The statutory motion cannot be used to assert *defense counsel's* failure to provide adequate representation relating to immigration consequences."].) Indeed, defendant twice declared he reviewed the felony plea form with his deputy public defender and understood that pleading guilty might have the consequence of deportation. Thus, defendant never raised the issue of any purported failure by defense counsel to advise him of the negative immigration consequences of the plea.

Although the court twice characterized defendant's motion as coming under section 1473.7 and cited to a now unpublished decision addressing section 1473.7 relief, the court's analysis properly related to the section 1016.5 motion before it, i.e., *the court's* purported error in failing to advise defendant of the immigration consequences of his plea.[8] Thus, because defendant failed to raise any issue with respect to section 1473.7 relief below, he forfeited the issue *on appeal*. As a reviewing court, we will not consider the issue as if we were a court of original jurisdiction on this matter. Nonetheless, because we hold defendant did not file a section 1473.7 motion below, nothing prejudices him from filing one in the future.

---

[8] We acknowledge that section 1473.7 relief does not appear to be limited to *counsel's* failure to advise the defendant of the negative immigration consequences of the plea but can also include purported error by the court. However, section 1016.5 is explicitly limited to the court's purported error and cannot include allegations of counsel error. (*Arendtsz*, *supra*, 247 Cal.App.4th at p. 619; *Chien*, *supra*, 159 Cal.App.4th at p. 1285.)

9

In his reply brief, defendant appears to argue that as a result of changes in the law, both statutory and case, there is no longer a distinction between sections 1018, 1016.5, and 1473.7 motions:[9] "Given this new emphasis on whether the defendant actually understood that he would be subject to deportation by pleading guilty or no contest, the focus is less on whether the trial court erred or counsel was ineffective in failing to advise him of those probable consequences." Thus, he contends a motion filed and argued under only one of these statues is enough to subsume the law and arguments related to the others, whether raised or not. We disagree.

For this proposition, defendant cites *People v. Camacho* (2019) 32 Cal.App.5th 998 (*Camacho*) and *People v. Mejia* (2019) 36 Cal.App.5th 859 (*Mejia*). However, in *Camacho*, defendant filed a motion solely under section 1473.7. (*Camacho*, at p. 1000.) The defendant acknowledged in his motion that the judge had informed him his conviction could lead to deportation but argued that *defense counsel* told him everything would be fine and never told him of the consequences of the plea. (*Id*. at 1001.) Likewise, in *Mejia*, defendant filed a motion solely under section 1473.7 arguing that *his attorney*

---

[9] At oral argument, defendant's counsel argued that his motion was also brought under section 1018. We do not dispute that. However, section 1018 relief may only be sought within six months of the judgment. (§ 1018; *People v. Vivar* (2021) __ Cal.5th ___ [2021 Cal. Lexis 2968 *24] (*Vivar*).) Here, the court sentenced defendant on March 10, 2017; defendant did not bring his motion to vacate the judgment until February 7, 2019. Thus, regardless of whether the motion was brought, in part, under section 1018, the time had long since passed for relief under its auspices. Moreover, even if defendant could have received relief via section 1018, he forfeited any claim by failing to request a ruling on the issue. (*People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1181 ["To the extent that [defendant] failed to request a final ruling on the issue, . . . the claim was forfeited."].)

never asked him about his immigration status and never explained he would be imminently deportable if he pled to the charges.  (*Mejia*, at pp. 862-863.)  Thus, counsel in both *Mejia* and *Camacho* raised the issue of *counsel error* below, unrelated to any purported court error, and properly filed the motion under section 1473.7; in contrast, defendant here raised only the issue of *court error* below, and counsel error only insofar as counsel failed to point out the court's purported error, pursuant to section 1016.5.  Thus, defendant forfeited any error *on appeal* under section 1473.7 by failing to raise it below.

> B.      *Section 1016.5 Error*

Defendant contends the court erred in denying his section 1016.5 motion because he was prejudiced by the failure of the court that took his plea to advise him of the negative immigration consequences of his plea.  We disagree.

"Section 1016.5, subdivision (a), requires a trial court, prior to accepting a guilty, nolo contendere or no contest plea, to administer the following advisement on the record: 'If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.'  Section 1016.5 further provides, 'If . . . the court fails to advise the defendant as required by this section and the defendant shows that conviction of the offense to which defendant pleaded guilty or nolo contendere may have [adverse immigration] consequences . . . the court, on defendant's motion, shall vacate the judgment and permit the defendant to withdraw the plea . . . and enter a plea of not

11

guilty.' [Citation.] Our Supreme Court has held, to obtain that relief, the following must be present: the defendant was not properly advised of the immigration consequences of the plea as required by section 1016.5, subdivision (a); there existed, at the time of the motion, more than a remote possibility that the conviction will have one or more of the specified adverse immigration consequences; and the defendant was prejudiced by the nonadvisement." (*Arendtsz*, *supra*, 247 Cal.App.4th at pp. 616-617.)

"The defendant bears the burden of demonstrating prejudice. [Citations.] The accused must prove it was reasonably probable he or she would not have entered a guilty, no contest or nolo contendere plea if properly advised. [Citations.] Our Supreme Court has explained: 'To that end, the defendant must provide a declaration or testimony stating that he or she would not have entered into the plea bargain if properly advised. It is up to the trial court to determine whether the defendant's assertion is credible, and the court may reject an assertion that is not supported by an explanation or other corroborating circumstances.' [Citations.] Our review is for an abuse of discretion." (*Arendtsz*, *supra*, 247 Cal.App.4th at p. 617.)

Here, defendant initialed a provision of the plea form reflecting that "[i]f I am not a citizen of the United States, I understand that this conviction may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." Defendant initialed a provision, which indicated he "had adequate time to discuss with [his] attorney . . . the consequences of any guilty plea . . . ." Defendant signed the plea form reflecting he had "read and underst[oo]d this entire document." Defense counsel signed the agreement

12

indicating defendant had an adequate opportunity to the discuss the case with counsel and understood the consequences of the guilty plea.[10]

The court asked defendant if the initials and signatures on all the plea forms were his. Defendant responded that they were. The court asked defendant if he had gone "over all these plea forms with" his attorney. Defendant said he had. The court asked defendant if he understood everything on the forms. Defendant responded that he did. The court asked defendant if he had any questions. Defendant said he did not. The court noted that it had made all the appropriate findings. Although the court did not provide an oral advisement of the negative immigration consequences of the plea, it ensured that defendant understood all of the provisions of the plea form including, implicitly, the provision warning of the immigration consequences of the plea. (*Araujo*, *supra*, 243 Cal.App.4th at p. 762 [the § 1016.5 advisement can be in writing; a verbal advisement is not required].) Moreover, the court expressly found defendant's assertion in his declaration that he would not have entered into the plea bargain if properly advised uncredible. For purposes of section 1016.5, defendant was adequately advised of the immigration consequences of his plea. Thus, there was no error.

We disagree with the holding in *People v. Ruiz* (2020) 49 Cal.App.5th 1061, 1066 (*Ruiz*) that a section 1016.5 advisement is per se invalid. (*Ruiz*, at p. 1065 ["Defendants must be advised that they *will be* deported, excluded, and denied naturalization as a

---

**10** Defendant initialed and signed identical provisions in his seven misdemeanor cases. Likewise, defense counsel signed the same provision in all seven misdemeanor cases.

13

*mandatory* consequence of the conviction."]; contra, *Arendtsz, supra,* 247 Cal.App.4th at p. 617 [advisement defendant's plea "would" rather than "may" have immigration consequences complied with the requirements of § 1016.5]; *Araujo, supra,* 243 Cal.App.4th at p. 762 ["The advisement need not be in the exact language of section 1016.5 and can be in writing.  Substantial compliance is all that is required."].)  The court in *Ruiz* relied on our Supreme Court's holding in *People v. Patterson* (2017) 2 Cal.5th 885 (*Patterson*),[11] that a defendant's receipt of a standard section 1016.5 advisement that the plea "may" have negative immigration consequences did not operate as a per se bar to the filing of a section 1018 motion.  (*Patterson*, at pp. 895-896.)  Based on this, *Ruiz* held, "Defendants must be advised that they *will be* deported, excluded, and denied naturalization as a *mandatory* consequence of the conviction." (*Ruiz*, at p. 1065.)  Of course, *Patterson* said nothing of the sort.  *Patterson* stands for the proposition that the standard section 1016.5 advisement *may not*, in and of itself, be sufficient evidence to defend against a section 1018 motion.  (*Patterson*, at pp. 895-899.)  It did not change the standard advisement required by section 1016.5, it did not apply to anything other than a section 1018 motion, it did not render its holding retroactive, and it certainly did not hold

---

[11]  *Patterson*, in turn, relied on the United States Supreme Court's decision in *Padilla v. Kentucky* (2010) 559 U.S. 356, which held, "When the law is not succinct and straightforward . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences.  But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear." (*Id*. at p. 369.)  *Padilla* relates to *counsel's* duty to advise of the negative immigration consequences of a plea, not the court's duty to so advise.  Thus, *Padilla* does not apply to a motion brought under section 1016.5.

that the section 1016.5 advisement was per se invalid. (*Patterson*, at pp. 895-899; *People v. Bravo* (2020) 58 Cal.App.5th 1161, 1167 (*Bravo*), review granted Mar. 24, 2021, S266777, disapproved of for the standard of review in *Vivar*, *supra*, ___ Cal.5th ___ [2021 Cal. Lexis 2968, at p. *23 & fn. 4] ["it remains unclear whether *Ruiz* and other recent cases should be applied retroactively to plea bargain cases"]; *Ruiz*, *supra*, 49 Cal.App.5th at pp. 1070-1071 (dis. opn. of Yegan, J.) ["*Patterson* does not resolve or even mention retroactivity."]) Rather, *Patterson* simply allowed a defendant who had received the section 1016.5 advisement to attempt to convince a court, acting in its discretion, that despite that advisement, the court should allow the defendant to withdraw his plea pursuant to section 1018. Thus, the court acted within its discretion in denying defendant's section 1016.5 motion.

Defendant contends that earlier authorities interpreting section 1016.5 like *Araujo*, *Chien*, and *Arendtsz* are no longer relevant due to the passage of section 1473.7 and the cases interpreting it. However, defendant cites no case for this proposition. None of these cases have been overruled. No published case even disagrees with or distinguishes *Araujo* or *Arendtsz*. Only one published case disagrees with *Chien*, but only for the standard of review. (*People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 76 (*Ogunmowo*).) There is simply no published authority for the proposition that a defendant filing only a section 1016.5 motion is entitled to relief under section 1473.7. (See *People v. Cruz-Lopez* (2018) 27 Cal.App.5th 212, 220-221 [Sections 1016.5 and 1473.7 are different avenues of relief directed at differently situated defendants.]; accord *People v. DeJesus* (2019) 37 Cal.App.5th 1124, 1130-1131 (*DeJesus*); accord, *Vivar*, *supra*, ___ Cal.5th ___

15

[2021 Cal. Lexis 2968, at p. *6].)  The only published cases addressing section 1016.5

relief within the context of section 1473.7 are those in which the defendant filed for relief

under both sections.**12**  (*People v. Ruiz* (2020) 49 Cal.App.5th 1061, 1064 (*Ruiz*); *Bravo*,

*supra*, 58 Cal.App.5th at p. 1167.)  Here, defendant filed for relief solely under

section 1016.5; thus, he cannot obtain relief on appeal under the authority of

section 1473.7.

Indeed, despite the passage of section 1473.7, its subsequent amendment, and the

cases interpreting it, section 1016.5 remains current in the same form as prior to the

enactment of section 1473.7.  "It is a settled principle of statutory construction that the

Legislature '"is deemed to be aware of statutes and judicial decisions already in

existence, and to have enacted or amended a statute in light thereof.  [Citation.]"

[Citation.]' [Citation.]  Courts may assume, under such circumstances, that the

Legislature intended to maintain a consistent body of rules and to adopt the meaning of

statutory terms already construed.  [Citations.]  Applying this principle here, we conclude

that the Legislature intended" to maintain section 1016.5 relief separate from

section 1473.7 relief.  (*People v. Scott* (2014) 58 Cal.4th 1415, 1424; see *DeJesus*, *supra*,

---

**12**  Though the propriety of a court ruling on a motion pursuant to both sections is questionable.  "'Generally, . . . section 1016.5 relief [is] the means available to an appellant who is *in custody* or restrained and wishes to withdraw his plea because he was not advised of immigration consequences of his plea.  [Citation.]  Section 1473.7 permits persons unable to assert habeas corpus or section 1016.5 claims to have standing to challenge a conviction.  To obtain relief per this statute, the individual *cannot be in custody* or under restraint.'" (*DeJesus*, *supra*, 37 Cal.App.5th at p. 1131, italics added; see *Vivar*, *supra*, ___ Cal.5th ___ [2021 Cal. Lexis 2968, at pp. *17-*24].)  We note we have no information as to whether defendant was in custody when defense counsel filed the motions for section 1016.5 relief.

16

37 Cal.App.5th at p. 1130; *Vivar*, *supra*, ___ Cal.5th ___ [2021 Cal. Lexis 2968, at pp. *22-24].) The Legislature in enacting section 1473.7 could have abrogated section 1016.5 in its entirety or amended it if they intended to provide relief solely under section 1473.7. Since they did not, we assume they meant to maintain both sections as separate avenues of relief. Thus, under section 1016.5 and the cases interpreting it, defendant failed his burden of establishing error. The court properly denied defendant's motion.

C. *Section 1473.7 Relief*

Assuming arguendo that defendant is entitled to relief pursuant to section 1473.7, despite his failure to file a motion under its auspices, we still hold he has failed to establish error.

Section 1473.7, subdivision (a)(1), provides, "'[a] person no longer imprisoned . . . may prosecute a motion to vacate a conviction. . . : [¶] (1) . . . [that] is legally invalid due to a prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty . . . .'" (*Mejia*, *supra*, 36 Cal.App.5th at p. 869.) "To obtain relief, [a defendant] must show by a preponderance of the evidence that the plea was legally invalid due to a prejudicial error. The statute defines error as one that damaged his ability to meaningfully defend against the actual or potential adverse immigration consequences of his plea. To show prejudice, [a defendant] must establish that he would not have entered the plea if he had known it would render him deportable. In assessing the latter element, courts should look to 'contemporaneous evidence to substantiate a defendant's expressed preferences.'" (*DeJesus*, *supra*, 37 Cal.App.5th

17

at pp. 1133-1134; see *Mejia*, *supra*, 36 Cal.App.5th at pp. 865-866; *Camacho*, *supra*, 32 Cal.App.5th at pp. 1011-1012; *Ruiz*, *supra*, 49 Cal.App.5th at p. 1067.)

We review the denial of a section 1473.7 motion independently.[13] (*Vivar*, *supra*, ___ Cal.5th ___ [2021 Cal. Lexis 2968, at p. *5].) "'[U]nder independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law.' [Citation.] When courts engage in independent review, they should be mindful that '"[i]ndependent review is not the equivalent of de novo review . . . ."' [Citation.] An appellate court may not simply second-guess factual findings that are based on the trial court's own observations." (*Id.* at p. *25.) The independent standard of review "accords substantial weight to the trial court's credibility findings . . . ." (*Id.* at p. *20.) "In section 1473.7 proceedings, appellate courts should similarly give particular deference to factual findings based on the trial court's personal observations of witnesses. [Citation.] Where, as here, the facts derive entirely from written declarations and other documents, however, there is no reason to conclude the trial court has the same special purchase on the question at issue; as a practical matter, '[t]he trial court and this court are

---

[13] In our tentative opinion, we cited to this court's decision in *Bravo*, *supra*, 58 Cal.App.5th at p. 1167, for the proposition that abuse of discretion was the proper standard of review in determining whether a defendant had suffered error for section 1473.7 purposes. *Vivar* disapproved of *Bravo* for its standard of review. (*Vivar*, *supra*, ___ Cal.5th ___ [2021 Cal. Lexis 2968, at p. *24 & fn. 4].) However, *Vivar* only addressed the prejudice element of section 1473.7 relief because the parties had conceded, and this court had held, that defendant had suffered error for section 1473.7 purposes. (*Vivar*, at pp. *3-*4.) Thus, arguably, the abuse of discretion standard for determining error under section 1473.7 survives. Nonetheless, out of an abundance of caution, we will here adopt the independent review standard of *Vivar* on the error element for section 1473.7 purposes.

18

in the same position in interpreting written declarations' when reviewing a cold record in a section 1473.7 proceeding." (*Id.* at p. *26.)

Here, despite acknowledging in his declaration that he reviewed the felony plea form with defense counsel and defendant understood his conviction "***may***" have negative immigration consequences, defendant declares if he had understood the plea "***would***" have resulted in deportation, he would have rejected the plea or have agreed to serve additional time in custody pursuant "to an immigration-safe alternative offense." However, defendant did not object to the immigration consequences of his plea until approximately two years after he entered his plea and only once those consequences arose. (*Vivar*, *supra*, ___ Cal.5th ___ [2021 Cal. Lexis 2968, at pp. *32-*33] [The defendant repeatedly objected to the immigration consequences of his plea within months of entering it, facts which provided "adequate corroboration that he would [not] have pleaded guilty had he known it would result in his deportation."].)

Moreover, defendant's self-serving declaration is not corroborated by contemporaneous evidence such as an affidavit and/or testimony by counsel who represented defendant at the time of the plea. (*DeJesus*, *supra*, 37 Cal.App.5th at p. 1134; *Camacho*, *supra*, 32 Cal.App.5th at p. 1009 ["[D]efendant's claims of error were supported by his former attorney's undisputed testimony . . . that he misunderstood the potential immigration consequences . . . and he did not explore possible alternatives to pleading to an aggravated felony."]; *Vivar*, *supra*, ___ Cal.5th ___ [2021 Cal. Lexis 2968, at p. *9] [The defendant provided counsel's e-mail correspondence and handwritten notes that she did not "advise him as to the actual immigration consequences

19

of a plea . . . or any other plea."].)  Thus, defendant failed his burden of offering contemporaneous objective evidence to support the contents of his declaration.

Defendant, here, "fails to offer any affirmative evidence from which a reasonable fact finder could conclude that his trial attorney failed to negotiate or consider an immigration neutral disposition.  He did not offer any evidence from the prosecutor, his public defender, or an immigration expert on this point.  Furthermore, he fails to identify any 'immigration-neutral disposition to which the prosecutor was reasonably likely to agree.'"  (*DeJesus*, *supra*, 37 Cal.App.5th at p. 1136; see *People v. Olvera* (2018) 24 Cal.App.5th 1112, 1118 [Defendant did "not identify any immigration-neutral disposition," and did not offer an expert declaration opining that alternative, nondeportable dispositions would have been available and acceptable by the prosecutor.]; *People v. Bautista* (2004) 115 Cal.App.4th 229, 239-240 & fns. 7-8 [Defendant provided the court an affidavit from an attorney with extensive experience representing immigrants in criminal court, who opined that the defendant's plea counsel provided prejudicial ineffective assistance of counsel by failing to attempt to negotiate a plea to a nondeportable offense.]; *Camacho*, *supra*, 32 Cal.App.5th at p. 1009 ["[D]efendant's claims of error were supported by his former attorney's undisputed testimony . . . ."]; *Vivar*, *supra*, ___ Cal.5th ___ [2021 Cal. Lexis 2968, at p. *34] [The defendant provided an "uncontradicted declaration from [an] immigration expert [who wrote that the defendant] could [have] entered . . . a plea without subjecting himself to mandatory deportation," and the defendant offered evidence he had initially been offered a plea agreement that would have completely avoided any immigration consequences.].)

20

Defendant even failed to support the statements in his declaration by testifying at the hearing on his motion. (*Camacho*, *supra*, 32 Cal.App.5th at p. 1002 [Defendant "testified that his attorney did not tell him that this charge would subject him to mandatory deportation or administrative removal without a court deportation hearing, or that the conviction would prevent him from ever becoming a legal permanent resident."]; *Mejia*, *supra*, 36 Cal.App.5th at p. 872 ["Mejia's undisputed testimony at the evidentiary hearing established that he did not 'meaningfully understand' or 'knowingly accept' the mandatory deportation consequences when he pleaded guilty in 1994."].) Thus, defendant failed to satisfy his burden of proof and production by failing to provide contemporaneous evidence to support his own self-serving declaration. (*Vivar*, *supra*, ___ Cal.5th ___ [2021 Cal. Lexis 2968, at pp. *31-*32] [The defendant proffered "contemporaneous objective facts that corroborate [his] concern about the immigration consequences of his plea options."].) Therefore, we independently conclude defendant's declaration was self-serving and uncredible.

We disagree with courts that find defendants' declarations must be taken at face value. (*Ogunmowo*, *supra*, 23 Cal.App.5th at pp. 78-81; see *Bravo*, *supra*, 58 Cal.App.5th at p. 1184 (conc. opn. of Raphael, J.) ["[D]efendant's declaration not only supports but, in the absence of any contrary evidence, compels the conclusion that he was not advised that his . . . guilty plea required mandatory deportation as a consequence."]; contra, *Bravo*, at p. 1172, fn. 8 (maj. opn. of Ramirez, P.J.) ["Since the advisement, using the appropriate language, is present in the record, there is no presumption favoring defendant's declaration . . . ."].) Thus, again, we independently conclude that without

21

objective contemporaneous evidence to support the claims in his declaration, defendant's declaration was uncredible.  Ergo, the trial court committed no error in denying defendant's motion because defendant failed to establish any error in his counsel's advisement of the immigration consequences of the plea.

D.       *Prejudice Under Either Section 1016.5 or Section 1473.7*

Even assuming defendant had satisfied his burden of showing error, we hold that defendant failed to satisfy his burden of showing prejudice under either section 1016.5 or section 1473.7.

"'Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies.  [Rather, they] should look to contemporaneous evidence to substantiate a defendant's expressed preferences.'"  (*DeJesus*, *supra*, 37 Cal.App.5th at p. 1134; see *Bravo*, *supra*, 58 Cal.App.5th at p. 1167.)  "'[A] defendant's self-serving statement—after trial, conviction, and sentence—that with competent advice he or she *would* have accepted [or rejected] a proffered plea bargain, is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice, and must be corroborated independently by objective evidence.'"  (*Bravo*, at p. 1171.)

Here, defendant fails to offer any independent, objective, corroborative evidence that would have supported a choice to reject the plea bargain and go to trial.  (*DeJesus*, *supra*, 37 Cal.App.5th at pp. 1135-1137 [no showing of strength of case against defendant]; *Mejia*, *supra*, 36 Cal.App.5th at p. 872 ["[T]he lower court acknowledged, there are some lingering questions about the strength of the underlying evidence:  'The

preliminary hearing transcript leaves several remaining uncertainties . . . ."']; *Bravo*, *supra*, 58 Cal.App.5th at p. 1175 ["defendant offered no copies of the police reports, witness statements, transcript of the arraignment . . . , or anything else."]; *Vivar*, *supra*, ___ Cal.5th ___ [2021 Cal. Lexis 2968, at p. *12 [The defendant "asked 'a specific question about deportation' [citation], a question that 'required an attorney to research and apprise their client of the immigration consequences of a plea'"].) Defendant entered his plea prior to a preliminary hearing, but he could have, but did not, offer the police report(s) into evidence, a declaration and/or testimony of his defense counsel with respect to the evidence against him, and/or a declaration and/or testimony from the prosecutor of the evidence against him. Defendant similarly failed to testify himself at the hearing on the motion in support of the contents of his declaration.

Moreover, defendant's plea was a negotiated disposition, not a plea to the sheet; thus, he obtained an express benefit from the bargain. (*Mejia*, *supra*, 36 Cal.App.5th at p. 872 ["[U]nlike most guilty pleas, this was a 'straight up' plea directly to the court rather than a negotiated disposition."].) Likewise, defendant had a prior criminal record, which included two second degree burglary convictions and a conviction for felony vandalism; he was on active mandatory supervision when he committed the charged offenses. (*Camacho*, *supra*, 32 Cal.App.5th at p. 1011 ["Defendant has no other adult criminal convictions."]; *Mejia*, at p. 873 ["Mejia had no criminal record . . . ."].) If he took the matter to trial, defendant faced an attempted robbery charge with a personal use of a deadly weapon enhancement and a separate charge of brandishing a knife. In addition, he faced eight misdemeanor offenses in seven separate cases. As the court found, "Again,

23

when there is an unlikelihood of an acquittal, in this case, for example, the attempt[ed] [robbery], if he had taken the stand in his own defense, he would have been impeached with the three prison priors that he had for all theft offenses." "I don't believe that he would have received a more favorable disposition that would have resulted in not being deported or subject to deportation."

Finally, although defendant established that he first came to the United States when he was two years old, he failed to establish other personal ties to the country such as a wife, children, other family, and a work history; he also failed to show a lack of ties to his home country. (*Mejia*, *supra*, 36 Cal.App.5th at p. 872 ["At the time of his guilty pleas, Mejia's wife and infant son were living in the United States, as well as his mother and six siblings. Indeed, Mejia's only remaining family tie to Mexico was his father, who passed away just before Mejia entered his guilty pleas."]; *Camacho*, *supra*, 32 Cal.App.5th at p. 1011 ["Defendant is, and at the time of his plea was, married to a United States citizen with an American citizen son, and now also an American citizen daughter. At the time of his plea, defendant was employed building pallets and now works as a tow truck driver."]; *Bravo*, *supra*, 58 Cal.App.5th at p. 1167 [Defendant's argument on appeal with respect to personal ties to the United States were not contained in defendant's declaration.]; *Vivar*, *supra*, ___ Cal.5th ___ [2021 Cal. Lexis 2968, at pp. *3, *31] [The defendant proffered evidence of "robust ties to the United States" including that he came to this country when he was only six years old; had a mother, wife, children, and grandchildren who were citizens; had a son who was serving in the U.S. Air Force awaiting deployment to the Middle East; "lacked any meaningful ties to

24

his country of birth"; and "spoke Spanish 'like an American,' and found it 'difficult to function in Mexican society because people treat [him] like an outsider.'"].)  Thus, defendant "fails to offer 'contemporaneous evidence' that he would have refused to enter the plea if he had known *it would render him deportable*."  (*DeJesus*, *supra*, 37 Cal.App.5th at p. 1137; see *Vivar*, at p. *33 ["In our view, these objective and contemporaneous facts corroborate, in a most convincing way, the statement in [the defendant's] declaration that he 'would never have pleaded guilty' if his attorney had informed him of the plea's consequences."].)  The totality of the circumstances here, including the charges against defendant, his criminal record, the benefit defendant received by entering into a negotiated disposition, and his failure to allege extensive personal ties to this country support the court's determination that defendant failed to show any prejudice from any purported error in the immigration advisements.  We independently agree with the court's determination.  Nonetheless, because we hold defendant forfeited any issues with respect to section 1473.7 because he did not actually file a section 1473.7 motion below, defendant is not prejudiced from filing a section 1473.7 motion in the trial court in the future.

## III.  DISPOSITION

The judgment is affirmed without prejudice to defendant filing a section 1473.7 motion.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:

MILLER
J.

FIELDS
J.