Filed 8/30/22  P. v. Simpson CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C093708 |
| Plaintiff and Respondent, | (Super. Ct. No. 16CF00158) |
| v. | |
| RICKY OLIVER SIMPSON, | |
| Defendant and Appellant. | |

Defendant Ricky Oliver Simpson is a noncitizen who moved to the United States in 2013.  He appeals from the trial court's denial of a motion to vacate his 2016 drug trafficking conviction, which subjects him to removal from the country under federal immigration law.  Arguing he would have rejected the plea had he correctly understood the immigration consequences, defendant contends his conviction is invalid due to prejudicial error.  We will affirm.

1

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *Defendant's crime and plea*

In December 2015, defendant was stopped by police for driving through a stop sign at approximately 10 miles per hour. When police searched his car, they found approximately 30 pounds of marijuana. Defendant was arrested and charged with transportation of marijuana for sale (Health & Saf. Code, § 11360, subd. (a)) and possession of marijuana for sale. (Health & Saf. Code, § 11359.)

In June 2016, defendant pleaded no contest to violating Health and Safety Code section 11359. As part of his plea, he signed a form setting forth the rights he was waiving. Among other things, he initialed the box next to the statement: "If I am not a citizen, I am hereby advised that conviction of the offense for which I have been charged may have the consequences of deportation[ ], exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States. By signing this form, I acknowledge that, if it applies to me, I am aware of this potential circumstance, have discussed it with my attorney (if I have one,) and am entering this plea with full knowledge of the potential immigration consequences." The first sentence of this statement mirrors the text of Penal Code section 1016.5, subdivision (a),[1] which contains the immigration advisement to be given to defendants before acceptance of a plea of guilty or nolo contendere.

Defendant signed the form and declared under penalty of perjury that he had "read, understood, and initialed each item above, and everything on the form is true and correct." Defense counsel Ryan Lamb (Lamb) also signed the statement indicating that he had "reviewed this form with my client and have explained each of the defendant's rights to him/her and answered all his/her questions with regard to his/her plea. Further, I

---

[1]  Undesignated statutory references are to the Penal Code.

have discussed with my client the content, substance, and meaning of all items and paragraphs initialed by him/her. I have [also] explained the consequences of his/her plea."

The probation report indicated defendant had no criminal record and was remorseful for his behavior. Although his parents still lived in Jamaica, he did not know their address. He also had multiple siblings, although the report did not indicate where they lived. Defendant had lived at his then-current address in Southern California for over a year, and he had worked for his employer for three years. He had a minor daughter whom he supported, and he had applied to a local school to become a mortician. Defendant was married.

With respect to the instant offense, defendant had been visiting his cousin in Butte County and was considering moving there. His cousin had asked him to deliver some boxes to his cousin's wife, who was to meet him at a local home improvement store. While en route to the store, defendant was pulled over for running a stop sign. Upon discovering the boxes in defendant's vehicle, the officer asked for permission to open them. Defendant believed the boxes would not contain anything illegal and gave consent. After his arrest, defendant's cousin disappeared and disconnected his phone. Defendant asked for probation. He promised to follow the rules and stated he did not want any legal trouble. The probation report noted that the circumstances of defendant's crime were not more egregious compared to other instances of the same crime, and probation was recommended.

During the August 2016 sentencing hearing, the trial court suspended imposition of sentence and ordered three years of probation. Defense counsel asked the court to stay the typical 30-day jail term, noting that defendant's employer said he would be unable to keep his job if he was incarcerated. The conditions of probation included: "If deported or caused to return to your country of citizenship, you are not to enter the United States

3

illegally. If you enter the United States legally or illegally, you are to report, in person, to the [probation department] within five (5) days of entry into the United States."

    B.    *First section 1473.7 motion*

In April 2019, defendant filed his first motion to withdraw his plea pursuant to section 1473.7, which enables an out-of-custody defendant to file a motion to vacate a conviction upon a showing by a preponderance of evidence the conviction is "legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence." (§ 1473.7, subd. (a)(1); see also § 1473.7, subd. (e)(3) [allowing withdrawal of guilty pleas].)

Defendant's new counsel submitted a declaration in support of the motion stating that defendant's previous counsel (Lamb) convinced defendant to plead to the drug charges, but failed to tell defendant that the conviction would cause "immigration problems." It is unclear where counsel obtained this knowledge.

Defendant also signed a declaration stating that Lamb "never explicitly told [him] that the charges would negatively impact [his] immigration status," and that had he "known of the immigration consequences, [he] would not have entered a 'no contest' plea."

Before the July 2019 hearing on the motion, defendant's immigration lawyer sent a letter to the court stating that defendant was currently in deportation proceedings for "failure to remove conditions from his green card and having a drug conviction" and was "inadmissible and deportable" under section 212(a)(2)(C)(i) of the Immigration and Nationality Act due to his conviction for violating Health and Safety Code section 11359. (8 U.S.C. § 1182(a)(2)(C)(i).)

During the July 2019 hearing, the trial court reduced defendant's conviction to a misdemeanor pursuant to Proposition 64, the Control, Regulate and Tax Adult Use of Marijuana Act of 2016. (Health & Saf. Code, § 11362.1.) Turning to defendant's section

4

1437.7 motion, defense counsel argued that the plea form insufficiently advised defendant of the immigration consequences because it used the word "may." The prosecutor objected, arguing defendant had failed to present any information indicating Lamb failed to properly advise defendant. The court agreed with the prosecutor that defendant had been properly advised under the law and denied defendant's motion.

C.      *Second section 1473.7 motion*

In October 2020, defendant filed another section 1473.7 motion. Defendant argued Lamb was ineffective because Lamb failed to advise him of the adverse immigration consequences of his plea deal. And defendant never would have agreed to the plea deal had he understood the immigration consequences. Defendant further argued the trial court's admonition during the plea hearing was insufficient because defendant needed Lamb's advice.

Defendant attached a copy of his permanent resident card and papers related to his removal proceedings indicating he was a Jamaican citizen, was born in 1981, and had resided in the United States since 2013. He also submitted a declaration stating that he had informed Lamb of his immigration status. Defendant had trusted Lamb to advise him of all potential consequences of accepting the plea deal, but Lamb never mentioned any immigration consequences. Defendant was now facing deportation proceedings, and he would have never taken the plea deal had he known about the immigration consequences. Defendant's immigration attorney, Keith Campbell, informed defendant that if defendant could withdraw his plea and enter a different plea, he would have other options and would not necessarily be deported.

Also attached was a declaration from defendant's Butte County attorney, Andrew D. Holley, stating that Lamb told him he had no recollection of seeking the advice of an immigration attorney in connection with defendant's plea. There also was no note in defendant's case file indicating that Lamb had ever consulted an immigration attorney. According to Holley, no immigration attorney would ever advise taking the plea at issue

5

here because it involves an aggravated felony under the immigration law and would lead to deportation. Holley speculated a different plea would have been preferable, even if it resulted in more severe criminal consequences.

The prosecutor opposed defendant's motion, arguing defendant had been informed that he might face immigration consequences via his plea form as required under section 1016.5, subdivision (a). According to the prosecutor, defendant had failed to establish any misunderstanding regarding the immigration consequences, or that he would have rejected the plea deal in order to negotiate a deal that did not result in deportation. Finally, given the circumstances of the crime, it was unlikely that any more favorable outcome would have occurred. The prosecutor argued that it would not have been appropriate under the facts of the case to plead to other charges that carried no immigration consequences.

The prosecutor attached a declaration from Lamb stating that it was his "common practice to advise clients of all possible immigration and other consequences of their plea in every criminal case. It is also [his] common practice to go over each plea form with each client, including the section which advises of immigration consequences, and will only join in the plea if [he] believe[d] they understand the nature and consequences of their plea."

During the January 2021 hearing, the trial court noted that it had reviewed the briefs and evidence. Holley argued Lamb had failed to adequately investigate the immigration consequences of the plea because he failed to discuss the matter with an immigration attorney. Here, immigration consequences could have been avoided had defendant pleaded to a nonaggravated felony such as an accessory crime under section 32. Holley noted that he had negotiated similar pleas for other clients in neighboring counties. Holley further noted that the prosecutor had made the original plea offer, and Lamb did not try to negotiate anything different.

6

The trial court denied defendant's motion, reasoning that the evidence established that defendant had been adequately advised regarding the immigration consequences of his plea. The court noted the advisement in the plea form, and Lamb's statement in his declaration that it was his practice to review immigration consequences.

Defendant timely appealed.

DISCUSSION

I

A.  *Legal background*

Section 1473.7, subdivision (a)(1) (as amended by Assem. Bill No. 1259 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 420, § 1)) provides that a person who is no longer in criminal custody may file a motion to vacate a conviction or sentence on the basis " ' "[t]he conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere." ' " (*People v. Rodriguez* (2021) 68 Cal.App.5th 301, 308.)  " 'A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel.' [Citation.]" (*Id*. at p. 310.)  (See *People v. Rodriguez* (2021) 60 Cal.App.5th 995, 1002.)

To establish prejudicial error, a defendant must demonstrate "a reasonable probability that [he] would have rejected the plea if [he] had correctly understood its actual or potential immigration consequences." (*People v. Vivar* (2021) 11 Cal.5th 510, 529 (*Vivar*).)  Courts must consider the totality of the circumstances (*ibid*.), including the defendant's "ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible." (*Id*. at p. 530; see *People v. Mejia* (2019) 36 Cal.App.5th 859, 866 [the key consideration is the defendant's mindset at the time the plea was taken].)

7

Hence, defendant must show that (1) an error damaged his ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of the plea, and (2) he would not have entered the plea with knowledge of the immigration consequences. (*People v. DeJesus* (2019) 37 Cal.App.5th 1124, 1133.) Proof must be by "a preponderance of the evidence." (§ 1473.7, subd. (e)(1).)

A trial court's denial of a section 1473.7 motion is subject to independent review. (*Vivar, supra*, 11 Cal.5th at pp. 524, 528.) Where, as here, "the facts derive entirely from written declarations and other documents, . . . '[t]he trial court and this court are in the same position in interpreting written declarations' when reviewing a cold record in a section 1473.7 proceeding." (*Vivar*, at p. 528.) In such cases, "it is for the appellate court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7." (*Vivar*, at p. 528.)

B.      *Analysis*

We find that defendant has not proven by a preponderance of the evidence any error justifying relief under section 1473.7, subdivision (a)(1). The plea form defendant initialed warned him of immigration consequences, including that a conviction may result in deportation. And Lamb declared that it was his typical practice to ensure that clients understood the consequences of their pleas, including immigration consequences, before he would join in the plea.

Even assuming, however, that defendant was not adequately advised about the immigration consequences of his plea, he also has not demonstrated prejudice. Prejudicial error under section 1473.7, subdivision (a)(1) is "not limited to the *Strickland*[2] test of prejudice, whether there was reasonable probability of a different

_____

**2**      *Strickland v. Washington* (1984) 466 U.S. 668 [80 L.Ed.2d 674].

8

outcome in the original proceedings absent the error." (*People v. Camacho* (2019) 32 Cal.App.5th 998, 1009.) Instead, a defendant must prove by a preponderance of contemporaneous evidence that he would not have entered the plea and would have risked going to trial had he known about the adverse immigration consequences. (*Id.* at pp. 1011-1012; *People v. DeJesus, supra*, 37 Cal.App.5th at p. 1133.)

Here, the contemporaneous evidence in the record at the time of defendant's plea reveals that his priority was to avoid jail time to maintain his employment. Defendant voiced no concerns about immigration consequences during his plea hearing. Defendant's ties to the United States also were limited at the time of the conviction. He had only lived here for three years at the time of his plea and, except for his cousin, his family lived in Jamaica. Finally, despite Holley's statements that he had successfully negotiated immigration-neutral plea deals for clients facing similar charges in neighboring counties, the prosecutor argued that the suggested alternate charges were inappropriate under the facts of the instant case. Under the circumstances, defendant has failed to meet his burden to establish a reasonable probability that he would have been able to secure an alternative plea arrangement, or rejected the plea and gone to trial, if he had understood the actual or potential immigration consequences of deportation.

## DISPOSITION

The order is affirmed.

                                          _____KRAUSE_____, J.

We concur:

_____ROBIE_____, Acting P. J.

_____HOCH_____, J.