Filed 10/16/23  P. v. Chweya CA2/5
Opinion following transfer from Supreme Court

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B301780 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA093880) |
| v. | |
| RODNEY D. CHWEYA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Debra A. Cole-Hall, Judge.  Affirmed.

Christopher L. Haberman, under appointment by Court of Appeal, for Defendant and Appellant.

Rob Bonta and Xavier Becerra, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

In 2006, appellant Rodney D. Chweya pled guilty to unlawful sexual intercourse with a minor. Twelve years later, Chweya moved to vacate his plea under newly-enacted Penal Code section 1473.7 and claimed that, due to his defense counsel's inaccurate advice, he did not understand that his plea subjected him to deportation.[1] He also argued he was prejudiced by his counsel's failure to bargain for an immigration-neutral plea. The trial court denied the motion, and he appealed. After we affirmed on direct appeal, the Supreme Court granted review, then transferred the matter to us for reconsideration in light of its opinion in *People v. Espinoza* (2023) 14 Cal.5th 311 (*Espinoza*). We have done so, and again affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

### 1. Appellant's Conviction

In 2006, the District Attorney charged appellant, an immigrant from Kenya, with unlawful sexual intercourse with a minor (§ 261.5, subd. (d)), committing a lewd act upon a minor (§ 288, subd. (c)(1)), and oral copulation of a minor (§ 288a, subd. (b)(2)). Appellant admitted committing the charged acts.

On April 26, 2006, appellant pled guilty to unlawful intercourse with a minor. On the plea form, appellant initialed the following provision: "I understand that if I am not a citizen of the United States, conviction for the offense charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization under the laws of the United States."

Appellant's counsel signed a waiver form stating he had explained to appellant each of the rights set forth in the plea agreement. At a hearing, the prosecutor asked appellant, "If you

---

[1] All further statutory references are to the Penal Code.

are not a citizen of the United States, your plea *will* cause you to be deported, denied re-entry, denied naturalization and amnesty. Do you understand this?" (Emphasis added.) Appellant responded, "Yes." Appellant faced a maximum four-year sentence. The court imposed and suspended a sentence of three years in state prison. Appellant was placed on five years' probation and ordered to serve 364 days in county jail. The remaining charges were dismissed.[2]

## 2.    *Deportation Proceedings*

Four years later, in 2010, the Department of Homeland Security charged appellant with removability for his conviction. The department noted that appellant was a citizen of Kenya who had come to the United States on a visa in 1988 when he was 10 years old. An immigration judge sustained the charge of removability.

The Board of Immigration Appeals (Board) affirmed, holding that a conviction of unlawful sexual intercourse with a minor was an aggravated felony that subjected appellant to deportation. The Board also denied appellant's application for adjustment of status, declining to exercise its discretion to waive inadmissibility to the United States. The Board reasoned that appellant did not merit a favorable exercise of discretion because he had "an extensive criminal record including, in addition to his sex offense, convictions in 1995 for assault, child cruelty, and disturbing the peace, 1997 for assault, 2002 for disturbing the peace and contempt of court, 2003 for providing false identification to a police office[r], and 2008 for driving with a

---

[2]    By pleading guilty to section 261.5, subdivision (d), defendant avoided mandatory registration as a sex offender. The dismissed charges would have required lifetime sex-offender registration. (§ 290, subd. (d)(2)(B).)

suspended license, an offense which he acknowledged occurred after his license was suspended for failing to repay child support arrears."

### 3. *Appellant's Motion to Withdraw His Plea*

On November 17, 2010, after being charged with deportation, appellant filed a motion in the trial court under sections 1192.5, 1475 and 1487(3) to withdraw his plea. At the motion hearing, the court heard testimony from David Price, the attorney who had represented appellant in the underlying criminal proceedings. Price told the court that, during the plea negotiations, appellant had been "concerned about his being deported," and had pled "to what [Price] thought was a misdemeanor so he would not be deported." Counsel testified that he told appellant that he could "come back and reduce the felony to a misdemeanor . . . and if . . . it was a misdemeanor, [appellant] would not be deported."

The trial court denied the motion, reasoning that appellant "had a taped confession to basically three felony counts, two of them definitely not reducible, and, as you say, maybe the lifetime [sexual offender] registration would be nothing if he got deported; but nevertheless, you take that into consideration if you think he's going to stay here. . . . I don't think I can ignore the fact that this was not a case Mr. Chweya could go to trial on. I agree the deportation was a harsh consequence, but I don't believe there's sufficient cause for me to set aside the plea . . . ."

### 4. *Appellant's Motion to Reopen His Case and Vacate His Conviction*

Eight years later, in 2018, the Legislature enacted section 1473.7, which provides that a court "shall" vacate a conviction or sentence upon a showing, by a preponderance of the evidence, of "prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly

4

accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere." (§ 1473.7, subd. (a)(1).)

In December 2018, appellant filed a motion to reopen his case and vacate his conviction under sections 1473.7 and 1016.5.[3] It is the denial of this motion that forms the basis of the appeal. Appellant argued he did not meaningfully understand, defend against, or knowingly accept the adverse immigration consequences of his plea. His "attorney did not advise him of any immigration consequences or even speak with him as to any consequences that would accompany his plea."

Appellant supported his motion with declarations by himself and counsel Price. In appellant's declarations, he stated that his attorney "never discussed with [him] any immigration consequences that stemmed from entering the plea." Had his attorney or the trial court advised him "of the immigration consequences triggered by [his] plea, [appellant] would not have entered" the plea, but would have attempted to negotiate an alternative plea or taken his case to trial.

Although appellant stated he did not discuss immigration consequences with his attorney, Price stated in a declaration that appellant's immigration status "was an important consideration in this case." At the time of the plea deal, Price believed that appellant's sentence "would not have any effect" on appellant's immigration status because if appellant complied with the terms

---

[3] Section 1016.5, among other things, contains the statutory mandate that a defendant must be advised of the immigration consequences of the plea.

This motion was taken off calendar due to confusion about whether appellant had retained new counsel. Several months later, in March 2019, appellant filed a new motion to vacate his conviction making the same arguments. The trial court considered the materials filed in support of both motions at the hearing.

and conditions of probation, he could apply to the court to have the charge reduced from a felony to a misdemeanor."

Appellant was unable to attend the hearing on his motion because, by then, he had been deported to Kenya. Price testified at the hearing, however. Price's testimony was inconsistent as to whether he and appellant had discussed the immigration consequences of the plea. Price initially testified that he thought appellant was pleading to a misdemeanor because appellant was only sentenced to 364 days in jail. Price did not know if the plea's immigration consequences "would be neutral, but I didn't think he would be deported." Price did not remember discussing the plea's immigration consequences with appellant, testifying: "other than to take the plea, I don't recall advising him on that issue at all, but I don't recall not advising him." Price was testifying in 2019 about events that had taken place in 2006.

Later in the hearing, Price testified that he had understood appellant was pleading guilty to a felony. In addition, when asked whether Price had "explained to [appellant] that within a few years, if he stayed out of trouble, no violation problems, if he was able to reduce the felony . . . to a misdemeanor, that he would no longer be deportable," Price responded, "I believe that's correct. Yes." Price later clarified that he told appellant that if there were no probation violations, "there is a possibility that [appellant] can apply to have the sentence reduced after a while so [he] would not be deported."

After Price testified, the prosecution moved to exclude appellant's declarations because appellant was not available for cross-examination. Appellant's counsel objected, arguing the declarations were admissible because appellant was unavailable as he had been deported to Kenya. The court ruled that appellant's declarations were inadmissible.

6

The court denied appellant's motion and concluded that appellant had understood the immigration consequences of his conviction. The court noted that appellant initialed the waiver form dealing with the immigration consequences of his plea, and appellant's counsel indicated he went over that form with appellant. The court found that Price and appellant both "knew that he was pleading to a felony and the plan was that if he got through probation, it could be reduced to a misdemeanor." The court noted that even if it had admitted appellant's statements, the "ruling would not change."

Appellant timely appealed. We affirmed by unpublished opinion. (*People v. Chweya* (July 30, 2021, B301780) [nonpub. opn.].)

On October 13, 2021, the Supreme Court granted review but deferred briefing pending its decision in *Espinoza, supra,* 14 Cal.5th 311. After the Court issued its opinion in *Espinoza*, it transferred the matter back to us and ordered us to vacate our prior decision and reconsider the appeal in light of the new authority.

## DISCUSSION

### 1.  *Legal Principles*

Under section 1473.7, a person who is no longer in criminal custody may move to vacate a conviction or sentence where the "conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere." (§ 1473.7, subd. (a)(1).)[4]  That is, a defendant must

---

[4]  When section 1473.7 was enacted in 2017, California courts uniformly assumed that moving parties who claimed to have received erroneous information from counsel needed to

7

first show he did not meaningfully understand the immigration consequences of his plea and then demonstrate that his misunderstanding was prejudicial.  The error is prejudicial if it is reasonably probable the defendant would have rejected the plea if he had correctly understood the immigration consequences. (*Espinoza, supra*, 14 Cal.5th at p. 319; *People v. Vivar* (2021) 11 Cal.5th 510, 529 (*Vivar*).)

"When courts assess whether a petitioner has shown that reasonable probability, they consider the totality of the circumstances.  [Citation.]  Factors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible." (*Vivar, supra*, 11 Cal.5th at pp. 529–530.)  Additional factors include "the defendant's probability of obtaining a more favorable outcome if he had rejected the plea, as well as the difference between the bargained-for term and the likely term if he were convicted at trial." (*Espinoza, supra*, 14 Cal.5th at pp. 320–321.)  These factors are not exhaustive, however, and no single factor is a prerequisite to relief.  (*Id.* at pp. 321, 325.)

A defendant must corroborate his assertions of prejudice with objective evidence, which "includes facts provided by declarations, contemporaneous documentation of the defendant's immigration concerns or interactions with counsel, and evidence

demonstrate that counsel rendered ineffective assistance under the guidelines enunciated in *Strickland v. Washington* (1984) 466 U.S. 668.  (*People v. Camacho* (2019) 32 Cal.App.5th 998, 1005.)  In 2018, the Legislature amended section 1473.7 to clarify that a finding of prejudicial error "may, but need not, include a finding of ineffective assistance of counsel." (*Id.* at p. 1006.)

of the charges the defendant faced." (*Espinoza*, *supra*, 14 Cal.5th at p. 321; see *Vivar*, *supra*, 11 Cal.5th at p. 530.) Although objective evidence includes facts provided by a defendant's declaration, " '[c]ourts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies.' " (*People v. DeJesus* (2019) 37 Cal.App.5th 1124, 1134, quoting *Lee v. U.S.* (2017) 582 U.S. 357, 369 (*Lee*).)

"In addition to submitting declarations, both parties are entitled to request an evidentiary hearing. (§ 1473.7, subd. (d).) The more robust and inclusive a record, the greater the opportunity for effective persuasion and meaningful judicial review. And the inquiry into a defendant's state of mind may often involve the weighing of credibility and circumstantial evidence." (*Espinoza*, *supra*, 14 Cal.5th at p. 325.)

We review the trial court's ruling on a section 1473.7 motion under the independent standard of review. (*People v. Vivar*, *supra*, 11 Cal.5th at p. 524.) " '[U]nder independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law.' [Citation.] When courts engage in independent review, they should be mindful that ' "[i]ndependent review is not the equivalent of de novo review . . . ." ' [Citation.] An appellate court may not simply second-guess factual findings that are based on the trial court's own observations. [Citations.] . . . In section 1473.7 proceedings, appellate courts should similarly give particular deference to factual findings based on the trial court's personal observations of witnesses." (*Id.* at p. 528.)

### 2. *Appellant Does Not Demonstrate Prejudice*

Appellant argues that his conviction must be vacated because Price failed to properly advise him of the immigration consequences of his plea or pursue an immigration-neutral plea

deal. Appellant contends he did not meaningfully understand the adverse immigration consequences of his plea and would not have accepted the plea if he had. Instead, he would have sought a plea to some other charge or faced the risks of trial. We do not resolve whether appellant understood the immigration consequences of the plea because we conclude appellant has not shown a reasonable probability that, but for any deficiency in the advisement, he would not have entered the same plea. That is, appellant has not established legal prejudice from any inadequate advisement.

Appellant points to the evidence cited in support of his inadequate-advisement claim—namely, Price's post-hoc statements and evidence contemporaneous to the time of the plea—to establish the importance he placed on his immigration status. Appellant first argues that the record establishes Price misadvised him "that by pleading Guilty to this charge he would be able to protect his immigration status as it could be later reduced to a misdemeanor . . . ." But over the years, Price provided inconsistent testimony about what he advised appellant during the plea negotiations. In 2010, Price testified he told appellant he could avoid deportation by applying to reduce the felony to a misdemeanor. In 2019, at the section 1473.7 hearing, Price initially said he could not remember discussing with appellant the immigration consequences of his plea. Price then revised this statement, testifying that he told appellant "there is a possibility" appellant could apply to have his sentence reduced so he "would not be deported".

We do not read this record as establishing that Price told appellant he would be able to "protect his immigration status" by pleading guilty. Instead, when questioned by the district attorney about his statements to appellant, Price revised his previous version and testified that he told appellant there was a

10

possibility he could avoid deportation by subsequently moving to reduce the felony to a misdemeanor. To the extent Price's testimony was internally inconsistent, it was for the trial court—not this court—to resolve the conflict. The trial court's findings as to Price's testimony do not support appellant's argument on appeal. (Compare *Espinoza, supra,* 14 Cal.5th at p. 320 [because trial court "conducted no evidentiary hearing, there is no basis for deference" to its factual findings or prejudice determination].)

As for appellant's own understanding of and investigation into the immigration consequences of his plea, the only contemporaneous evidence was that appellant understood his plea subjected him to deportation: When the district attorney asked him at the plea hearing whether he understood his plea would cause him to be deported, appellant responded without hesitation, "Yes." (Cf. *Espinoza, supra,* 14 Cal.5th at p. 318 [defendant advised the plea *may* have adverse immigration consequences]; *Lee, supra,* 582 U.S. at pp. 369–370 [when the trial judge during a plea colloquy asked the defendant if he understood he could be deported and whether that affected his decision, the defendant replied that it did and asked his attorney for advice].)

"Another consideration is whether alternative, immigration-safe dispositions were available at the time of the defendant's plea. Factors relevant to this inquiry include the defendant's criminal record, the strength of the prosecution's case, the seriousness of the charges or whether the crimes involved sophistication, the district attorney's charging policies with respect to immigration consequences, and the existence of comparable offenses without immigration consequences." (*Espinoza, supra,* 14 Cal.5th at p. 323.)

Appellant argues that he could have pled guilty to an equivalent immigration-safe felony. But unlike in *Espinoza,*

11

appellant has not offered any evidence that there were immigration-safe alternatives his attorney could have pursued. (*Espinoza, supra*, 14 Cal.5th at pp. 317, 321.) To the contrary, the record shows appellant could not "expect or hope a different bargain" was possible in light of the seriousness of the offense, his criminal record, and his confession to police that he had sexual intercourse with a minor. (*Vivar, supra*, 11 Cal.5th at p. 529.)

Appellant also argues that the evidence against him was relatively weak and the prison term he would face after trial was reasonably low, thereby reducing the risks of trial and the comparative benefits of the plea bargain.[5] (*Espinoza, supra*, 14 Cal.5th at p. 321 ["Also relevant are . . . the difference between the bargained-for term and the likely term if [the appellant] were convicted at trial"].) Yet those arguments understate the risk he faced. If appellant had been convicted of either dismissed count (§§ 288, subd. (c)(1), 288a, subd. (b)(2)), he would have been required to register as a sex offender for the rest of his life (§ 290, subd. (d)(2)(B) & (d)(3)). In exchange for his plea, he was convicted of a single count (§ 261.5, subd. (d)) that did not require registration.

The Supreme Court's opinions in *Vivar* and *Espinoza* stand in contrast to the case before us. In *Vivar,* the defendant moving for section 1473.7 relief filed a declaration claiming he would never have entered this plea had he understood that it would require his deportation. (*Vivar, supra*, 11 Cal.5th at p. 530.) His counsel's recollection and contemporaneous notes showed that the defendant had been concerned about the "consequences" of

---

[5]     Appellant's request for judicial notice of the Los Angeles District Attorney's current charging policies is denied. Policies enacted in 2022 are not probative of the options available to appellant in 2006.

his plea.  (*Ibid.*)  The record also showed that the prosecution had offered the defendant a plea under which he could have avoided mandatory deportation.  (*Id.* at p. 531.)  Under those circumstances, the court found " ' "a reasonable probability" ' that the [defendant] could have tried 'to obtain a better bargain that [did] not include immigration consequences.' " (*Ibid.*)  Likewise, in *Espinoza*, the defendant had "no prior criminal history at the time of his plea."  (*Espinoza*, *supra*, 14 Cal.5th at p. 324.)  And, as in *Vivar*, there was evidence an immigration-neutral plea would have been available to him.  (*Id.* at pp. 317, 321.)  In this case, appellant has not made a similar showing.

Finally, "[t]ies to the United States are [another] important factor in evaluating prejudicial error under section 1473.7 because they shed light on a defendant's immigration priorities. . . .  Community ties may be established by length of residence; immigration status; lack of connection to the country of origin; connections to family, friends, or the community; work history or financial ties; or other forms of attachment." (*Espinoza*, *supra*, 14 Cal.5th at p. 321.)  "Objective evidence of a defendant's community ties includes facts provided by a defendant's declaration or declarations from family members, friends, colleagues, community members, or other acquaintances."  (*Ibid.*)

The defendant in *Espinoza* presented ample evidence on this point, including "30 letters from family, friends, community members, clients, and employers documenting his family ties, community connections, and work history."  (*Espinoza*, *supra*, 14 Cal.5th at p. 317.)  Here, by contrast, although there is evidence appellant came to the United States at a young age and has family here, there is no evidence that he has strong ties to those family members or responsibility for their financial or emotional support.  To the contrary, one of his convictions

13

stemmed from a failure to pay child support. Nor is there evidence of appellant's participation in the community or his work history.

Here, based on our independent but deferential review, appellant has not offered evidence sufficient to establish his contemporaneous concern about the immigration consequences of his plea when he accepted the bargain, that he could have expected an immigration-neutral disposition, or that he would have gone to trial if he had fully understood the immigration consequences. Accordingly, appellant has not shown prejudice.

## 3. *Any Error in Excluding Appellant's Declarations Was Harmless*

Appellant argues the trial court erred in excluding his declarations on the ground that he was not present at the hearing to be cross-examined. Any error in the trial court's ruling is harmless.[6] (See *People v. Cudjo* (1993) 6 Cal.4th 585, 611 [we review the erroneous exclusion of evidence for whether it is reasonably probable the defendant would have achieved a more favorable result had the evidence been admitted].)

One part of the excluded testimony was that Price "*never* discussed with me *any* immigration consequences that stemmed from entering the plea." (Emphasis added.) This statement undercuts appellant's argument that his attorney misinformed him that he had a chance of avoiding deportation, however. The statement also suggests that appellant was not concerned about

---

[6] Respondent argues that appellant forfeited the argument that, under section 1473.7, an unavailable defendant may submit a declaration even though there would be no opportunity for cross-examination. The point is a question of law without controverted facts. Accordingly, we find no forfeiture. (See *DD Hair Lounge, LLC v. State Farm General Ins. Co.* (2018) 20 Cal.App.5th 1238, 1242.)

14

the immigration consequences of his plea because, even though the plea form and oral advisement informed him that he could or would be deported, appellant chose not discuss the subject with his attorney.

Other parts of appellant's declaration included an uncorroborated assertion that he would have rejected the plea had his attorney properly advised him that his conviction "would result in deportation." (See *Vivar, supra*, 11 Cal.5th at p. 530 [when a defendant claims he would not have entered his plea had he understood it would require his deportation, he must " ' "corroborate such assertions with 'objective evidence' " ' "].)

From our reading of the record, it is unlikely that if the trial court had admitted the declarations, the court would have ruled differently. But we need not speculate because the trial court has given us the answer: The trial court expressly said appellant's statements "would not change" its ruling:

> "I believe Mr. Chweya understood he faced deportation. I think the 364 days was a device that they were trying to use to hope that he would not be deported. I think that sometimes occurs. But that is just someone or people trying to work around something. But I think that Mr. Chweya knew that he was going to be deported and they were hoping that if the judge sentenced him a month later, because he pled in April and was sentenced in May, that they were hoping that maybe he was able to slip through the immigration custody."

We take the trial court's statement to mean that in addition to resolving any conflicts in Price's testimony in the prosecution's favor, the court would have resolved any conflicts between Price's testimony and appellant's declarations the same way: in the prosecution's favor. We conclude any error—error that we do not find—was necessarily harmless.

15

### *DISPOSITION*

The order denying appellant's section 1473.7 petition is affirmed.


RUBIN, P. J.

WE CONCUR:


MOOR, J.


KIM, J.