Filed 4/21/26  P. v. Khademi CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

| | |
|---|---|
| THE PEOPLE,<br>　　　Plaintiff and Respondent,<br><br>v.<br><br>DAVOOD KHADEMI,<br>　　　Defendant and Appellant. | C103387<br><br>(Super. Ct. No. 62-152196) |

Defendant Davood Khademi is a noncitizen who moved to the United States in 2012.  He appeals from the trial court's denial of a motion to vacate his 2000 assault with a deadly weapon conviction (Pen. Code,[1] § 245, subd. (a)(1)), which could prevent him from adjusting his status under federal immigration law.  Defendant contends the trial court erred in denying his motion because he did not meaningfully understand the immigration consequences of his plea, and he would not have entered the plea had he known about those consequences.  We will affirm.

---

[1]　　Undesignated statutory references are to the Penal Code.

1

# BACKGROUND

## A.     *Underlying Conviction and Plea*

During an argument with the K.E.,[2] a veteran, defendant attempted to stab K.E. and threatened to cut off his head.[3]  An information charged defendant with attempted murder (§§ 664/187, subd. (a); count one), assault with a deadly weapon (§ 245, subd. (a)(1); count two), and criminal threats (§ 422, subd. (a); count three), and alleged several enhancements.

During the plea hearing, defendant agreed to plead no contest to assault with a deadly weapon (§ 245, subd. (a)(1); count two) with no state prison time.  As part of the plea, defendant signed an advisement and waiver of rights form.  On this form, he initialed the box next to the statement:  "I understand that if I am not a citizen of the United States the conviction for the offense charged 'may have the consequence of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.'  ([Pen. Code,] § 1016.5)"  He also initialed the box next to the statement:  "By signing this form, you agree that you are now sober, and that you have not recently consumed any drugs or alcohol that has affected your ability to understand these proceedings."  Defendant signed the form and declared that he had read the entire form and that his attorney had explained "[his] rights, [his] defenses and the possible consequences of [his] plea."  Defense counsel, Martin Jones, also signed the form, attesting that he had explained the plea form to defendant and had advised defendant of his right, defenses, and consequences of the plea.

---

[2]     To protect the victim's privacy, we will refer to him by his initials.  (Cal. Rules of Court, rule 8.90(b)(4).)

[3]     The facts are taken from this court's prior opinion in defendant's first direct appeal from the judgment (see *People v. Khademi* (June 28, 2022, C094081) [nonpub. opn.] (*Khademi*)), which we incorporate by reference on our own motion (Cal. Rules of Court, rules 8.417, 8.155).

Defendant and defense counsel Jones orally affirmed that Jones had explained the plea and its consequences, defendant understood them, and defendant additionally affirmed that he was not under the influence of any substance that could affect his ability to understand the proceedings and that he was waiving his rights. The trial court advised defendant, "if you are not a United States citizen, your plea may result in deportation from the United States, exclusion from admission to the United States, or denied naturalization of citizenship," and defendant said he understood. Jones confirmed he had explained "that issue" to defendant. Defendant had a question for Jones, and they took a break in the proceedings. When they finished, the trial court informed defendant that he was pleading to felony assault with a deadly weapon. Defendant confirmed he understood and pled no contest.

At sentencing, to avoid a custodial sentence of more than 364 days, defendant waived all but 364 days of custody credits and agreed to probation. Defense counsel Jones explained that an immigration attorney had advised Jones that a custodial sentence of no more than 364 days "would improve [defendant's] immigration outcome" because his conviction would no longer be an aggravated felony for immigration purposes. It would, however, remain a crime of moral turpitude under immigration law. Jones said he had advised defendant accordingly and that they had communicated about this "pretty completely." The trial court spoke directly to defendant to ensure he understood the immigration consequences and determine whether he had any questions. The trial court said it was making no promises regarding defendant's immigration outcome, nor would defendant be permitted to subsequently withdraw his plea if it did not help his immigration status. Defendant confirmed he understood and did not have any questions. The trial court sentenced defendant to 364 days in county jail with time served and placed him on five years of felony probation. On the People's motion, the court dismissed the remaining counts in the interest of justice. The trial court deemed all fines satisfied.

3

Defendant subsequently violated probation.  On April 27, 2021, the trial court sentenced defendant to a low term of two years.

B.       *Section 1473.7 Motion and Proceedings*

On October 30, 2024, defendant filed a motion to vacate his plea pursuant to section 1473.7, subdivision (a)(1).[4]  The motion consisted of defendant's four-page declaration attesting to the following facts.

Defendant further stated that defense counsel Jones told him that he would not face any immigration consequences if he waived all but 364 days of custody credits. Defendant stopped the plea proceedings multiple times to speak with Jones.  During one break, defendant asked Jones how he could avoid immigration consequences, and Jones said he would seek to reduce defendant's felony conviction to a misdemeanor after his release  Defendant also asked if immigration law supported the immigration attorney's advice that his offense would not be deportable despite being a strike and a serious felony, and Jones said the immigration attorney knew what she was doing.  Twice during the plea proceedings defendant asked to speak with an immigration attorney, and Jones said the immigration attorney did not speak directly with clients.  Jones also denied defendant's request for an interpreter and told defendant to direct questions to him. Based on his own legal research, defendant later thought that his offense was deportable as an aggravated felony and that Jones, through the immigration attorney, had incorrectly advised him.  Defendant averred that he would not have entered the plea had he known

---

[4]      Defendant filed supplemental points and authorities to the motion, which included photo copied pages of Baggett et al., California Criminal Law Procedure and Practice, Continued Education Bar, 2024, section 52:13, pages 1855-1858.  Defendant also filed a second supplemental points and authorities to the motion alleging defense counsel in his probation violation case did not advise him regarding his immigration status.  Defense counsel for defendant's section 1473.7 petition alleged that defendant did not receive adequate immigration advisements when he was sentenced for his violation of probation. Defendant has not challenged the probation proceedings on appeal.

the possible immigration consequences and claimed he did not understand the immigration consequences due to his "poor English" and the medication he was taking. Defendant believed he had a defensible case, and, at the time of the plea, he "wanted to get out of jail because [his] father was dying."

The People filed an opposition to the section 1473.7 motion, contending: (1) the record did not clearly establish whether defendant's assault conviction made him deportable and nothing demonstrated he was facing deportation; (2) defendant had not requested an interpreter in his pending case, and he had filed legal motions and made arguments without one; and (3) he could not establish that he would not have taken the plea had he meaningfully understood the immigration consequences. On the latter point, the People argued that defendant moved to the United States when he was 31 years old;[5] was unemployed and homeless before the offense; received probation and avoided more serious charges and significant prison time as part of the plea deal; and could not claim that a more immigration-safe plea would have been available. The People further argued that defendant's self-serving statement that defense counsel Jones did not properly advise him was, by itself, insufficient to support his claim. The People also asserted defendant's motion was not timely.

At the hearing on defendant's section 1473.7 motion, defense counsel Paul Comiskey represented defendant. The trial court appointed a Kurdish interpreter for defendant.[6]

---

[5] While the prosecutor incorrectly stated that defendant was 32 years old at the time of his entry to the United States, the record reveals that defendant was 31 years old.

[6] At the beginning of the second day of the hearing, defense counsel Comiskey informed the trial court that defendant wanted to proceed in English without the interpreter because the interpreter spoke a different dialect and because defendant had been taking English classes. Comiskey noted that defendant had never requested an

Defense counsel Comiskey submitted a report from Mary Waltermire, an immigration attorney. Waltermire's report stated that defendant, a native citizen of Iran, entered the United States as a refugee on February 28, 2012. One year after admission, refugees are required to apply for permanent resident status, but defendant did not. Accordingly, defendant remained in refugee status. Defendant's assault conviction was not an aggravated felony and was therefore not a deportable offense. Despite the assault conviction being a crime involving moral turpitude, it was not a deportable offense because it occurred more than five years after defendant's admission to the United States. However, because the assault conviction was a crime involving moral turpitude, it most likely would prevent defendant from adjusting his status, i.e., he could not obtain permanent resident status or become a citizen. Waltermire opined that if defendant reopened his assault case and pled to an offense not involving moral turpitude, he might be permitted to adjust his status to permanent resident, which would provide greater protection from deportation and could eventually allow him to become a United States citizen. Defendant's assault conviction also precluded him from traveling outside of the United States and returning. However, even with a status change, defendant would need to consult an immigration attorney before traveling.

The People called defense counsel Jones. Throughout Jones's representation of defendant, defendant gave inconsistent answers about his immigration status, so Jones frequently discussed immigration consequences with defendant and informed him that the assault conviction was deportable regardless of status. Without knowing defendant's immigration status, Jones consulted with an immigration attorney about various plea contingencies based on different statuses and about reducing possible immigration consequences. Defendant needed to waive credits to receive a custodial sentence of less

interpreter during Comiskey's representation of him and that defendant appeared to understand their conversations.

6

than a year to avoid his assault conviction being designated an aggravated felony for immigration purposes. However, his conviction would remain a crime of moral turpitude under immigration law. Even so, defendant's plea provided the best outcome regarding immigration consequences, release from jail, and receiving probation. The prosecutor declined to resolve the case as a misdemeanor but agreed to let defendant waive his custody credits. Without the plea, defendant faced a seven-year to life indeterminate term for attempted murder with premeditation.

Defense counsel Jones informed defendant of the plea and explained its potential immigration consequences as well as the steps taken to minimize the likelihood of deportation, including waiving credits. Defendant said he understood. Jones further advised that they could seek to reduce his felony assault conviction to a misdemeanor if defendant successfully completed probation. However, Jones did not make any promises, nor was a reduction to a misdemeanor part of the plea deal. Despite always intending to go to trial, defendant became "very interested" in taking the plea deal after learning he would be released from custody shortly after the plea.

Defense counsel Jones had no concerns that defendant did not understand the plea proceedings. Although Jones had previously declared doubt as to defendant's competency, he had no concerns about defendant's competency at the time of the plea and was satisfied defendant understood the plea. Nor did Jones believe a lack of proficiency in English precluded defendant from understanding the plea proceedings. Jones and defendant always spoke in English, defendant never told Jones he did not understand, Jones always understood defendant, and defendant never requested an interpreter.

When the trial court issued the immigration consequences advisement during the plea colloquy, defendant asked for time to speak with defense counsel Jones. Defendant asked about immigration consequences, and Jones answered all of his questions. Jones

did not recall if defendant asked to speak with the immigration attorney, but Jones would have facilitated that, if possible.

Defendant testified at the hearing. Defense counsel Jones did not tell him he was pleading to a deportable offense and said his felony conviction would be reduced to a misdemeanor "no matter what." Defendant believed the credits he waived would result in less time on probation, and that Jones would file a motion to reduce his felony conviction to a misdemeanor upon his release. Defendant "[p]artially" understood that he was pleading to a felony but did not fully understand Jones's explanations due to being on psychotropic medication. Defendant further testified that he did not understand the plea or its immigration consequences because of his "poor" English. Defendant interrupted the plea proceedings five times to ask questions because of his "poor" English, and he asked Jones for an interpreter because they did not understand each other.

The trial court took judicial notice of the plea and sentencing transcripts and the petitions filed in defendant's probation violation case.

The trial court denied defendant's petition. It found the evidence presented during the hearing did not support defendant's contention that he did not understand the immigration consequences of his plea due to a language barrier or being under the influence of psychotropic medication. The trial court noted the evidence did not establish defendant's immigration status. It found defense counsel Jones had advised defendant that he faced negative immigration consequences, and defendant chose to enter the plea to assault with a deadly weapon with probation and credit for time served rather than risking an attempted murder conviction at trial. Based on the evidence, the trial court found defendant had failed to establish that prejudicial error damaged his ability to meaningfully understand the actual or potential adverse immigration consequences of his plea.

Defendant filed a timely notice of appeal.

8

DISCUSSION

Defendant contends the trial court erred in denying his section 1473.7 motion to vacate his plea. He contends he would have rejected the plea had he correctly understood the immigration consequences, and his conviction is invalid due to prejudicial error. We disagree.

A trial court's denial of a section 1473.7 motion is subject to independent review. (*People v. Vivar* (2011) 11 Cal.5th 510, 524, 528 (*Vivar*).) Under that standard, we " ' "exercise[] [our] independent judgment to determine whether the facts satisfy the rule of law." ' " (*People v. Espinoza* (2023) 14 Cal.5th 311, 319-320 (*Espinoza*).) We "give deference to the trial court's factual determinations if they are based on ' " 'the credibility of witnesses the [superior court] heard and observed,' " ' " but we do not owe deference "when the trial court's findings 'derive entirely from written declarations and other documents.' " (*Id.* at p. 320.)

A. *Advisement of Immigration Consequences*

Section 1473.7, subdivision (a)(1) provides that a person no longer in criminal custody may file a motion to vacate a conviction or sentence on the basis " ' "[t]he conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence." ' " (*People v. Rodriguez* (2021) 68 Cal.App.5th 301, 308.) Defendant must show that (1) an error damaged his ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of the plea, and (2) he would not have entered the plea with knowledge of the immigration consequences. (*People v. DeJesus* (2019) 37 Cal.App.5th 1124, 1133.) "[A]dvising a defendant that a no contest plea may in the abstract have immigration consequences, cannot be taken as placing him on notice that, owing to his particular circumstances, he faces an actual risk of suffering such." (*People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 204.) Defendant's

9

own subjective error, demonstrated in his declaration, is sufficient to show defendant did not understand the immigration consequences of the plea deal. (*People v. Alatorre* (2021) 70 Cal.App.5th 747, 769.) However, a defendant must corroborate factual assertions with " 'objective evidence.' " (*Vivar, supra,* 11 Cal.5th at p. 530.) "Objective evidence includes facts provided by declarations, contemporaneous documentation of the defendant's immigration concerns or interactions with counsel, and evidence of the charges the defendant faced." (*Espinoza, supra,* 14 Cal.5th at p. 321.) Proof must be by a preponderance of the evidence. (§ 1473.7, subd. (f)(1).)

We conclude that defendant has not proven by a preponderance of the evidence any error justifying relief under section 1473.7, subdivision (a)(1).

In denying defendant's motion to vacate his plea, the trial court rejected defendant's testimony that defense counsel Jones misadvised him and that he did not understand the plea or its immigration consequences due to his deficient English and current psychotropic medications. We give deference to the trial court's factual findings based on witness credibility and likewise do not credit these assertions. (*Espinoza, supra,* 14 Cal.5th at p. 320.) Additionally, defendant failed to corroborate these factual assertions with objective evidence. (*Vivar, supra,* 11 Cal.5th at p. 530.)

We likewise give deference to the trial court's finding that Jones had informed defendant that defendant faced negative immigration consequences. Moreover, defendant repeatedly indicated he understood his conviction may subject him to deportation, inadmissibility, or denial of naturalization. He signed the plea form to that effect and affirmed this understanding at the plea hearing. At sentencing, the trial court advised defendant that it was making no promises regarding defendant's immigration outcome and that defendant would not be permitted to withdraw his plea in the event the plea did not help his immigration status. Defendant again indicated he understood the immigration consequences of his plea. On this record, defendant fails to establish error.

10

B.  *Prejudice*

Even assuming, however, that defendant was not adequately advised about the immigration consequences of his plea, he also has not demonstrated prejudice.  To establish prejudicial error, a defendant must demonstrate "a reasonable probability that [he] would have rejected the plea if [he] had correctly understood its actual or potential immigration consequences." (*Vivar, supra,* 11 Cal.5th at p. 529.)  Courts must consider the totality of the circumstances, including the defendant's "ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible." (*Id.* at pp. 529-530; see *People v. Mejia* (2019) 36 Cal.App.5th 859, 866 [the key consideration is the defendant's mindset at the time the plea was taken].)  "Community ties may be established by length of residence; immigration status; lack of connection to the country of origin; connections to family, friends, or the community; work history or financial ties; or other forms of attachment." (*Espinoza, supra,* 14 Cal.5th at p. 321.)  "Also relevant are the defendant's probability of obtaining a more favorable outcome if he had rejected the plea, as well as the difference between the bargained-for term and the likely term if he were convicted at trial." (*Id.* at p. 320.)  Relevant factors "include the defendant's criminal record, the strength of the prosecution's case, the seriousness of the charges or whether the crimes involved sophistication, the district attorney's charging policies with respect to immigration consequences, and the existence of comparable offenses without immigration consequences." (*Id.* at p. 323)  "These factors are not exhaustive, and no single type of evidence is a prerequisite to relief." (*Id.* at p. 321.)

Here, defendant has failed to show that his priority in entering the plea was to avoid immigration consequences.  Defendant, who was born and raised in Iran, entered the United States as a refugee in 2012 when he was 31 years old, had been living in the United States for only about eight years at the time of the plea, and never applied for

11

permanent resident status. At the time of the plea, defendant's parents and seven siblings lived in Iran, he had no children, and had not been in a dating relationship since 2012. Before his arrest, defendant lived with a roommate and supported himself by "selling retail online." However, at the time the probation report was prepared, defendant was transient and reported no peer or familial support. Defendant's meager community ties are not enough to support an inference that he would have rejected the plea had he known of its immigration consequences. (*Espinoza, supra,* 14 Cal.5th at p. 323 ["a defendant's deep and long-standing ties to the United States . . . can support an inference that immigration consequences were of paramount concern at the time of the defendant's guilty plea"].) Additionally, while defendant averred that he would not have taken the plea if he had known of the immigration consequences, his declaration stated, "I wanted to get out of jail because my father was dying." Relatedly, defense counsel Jones testified that defendant had always intended to go to trial but became "very interested" in the plea deal upon learning he would be released soon after the plea. This suggests that defendant's motivation in taking the plea was, in large part, based on avoiding additional incarceration. (See *Vivar, supra,* 11 Cal.5th at pp. 529-530 [important factors include "defendant's priorities in seeking a plea bargain"].)

Defendant also failed to show any immigration-safe dispositions were available when he pled. Although defendant did not have a criminal record at the time of the plea, he did not provide any evidence that an immigration-neutral plea or alternative offenses were available or that the prosecution would have agreed to an immigration-neutral disposition. (See *Espinoza, supra,* 14 Cal.5th at p. 324 [a defendant's criminal history is relevant "because a defendant without an extensive criminal record may persuasively contend that the prosecutor might have been willing to offer an alternative plea without immigration consequences"].) Defense counsel Jones testified to the contrary that the prosecutor was not willing to let defendant plead to a misdemeanor and that the plea was the best one available to defendant. Further, despite stating in his declaration that he

12

"believe[d] [he] had a defensible case," defendant did not suggest what his defense might be or predict the likelihood of success. Had defendant proceeded to trial, he faced serious charges, including attempted murder, assault with a deadly weapon, criminal threats, and numerous enhancements, and a potential sentence of seven years to life in prison. As a result of the plea, defendant received probation with time served and was immediately released from custody. (See *Espinoza, supra,* 14 Cal.5th at p. 320 [comparing difference between likely term if convicted at trial and bargained-for term].)

Under the totality of the circumstances, we conclude that defendant has failed to show a reasonable probability that he would have rejected the plea had he meaningfully understood the immigration consequences.

DISPOSITION

The trial court's order denying defendant's motion to vacate his assault with a deadly weapon conviction is affirmed.

 

 

\s\
_____
Krause, J.

We concur:

 

\s\
_____
Robie, Acting P. J.

 

\s\
_____
Mesiwala, J.

13